MICHAEL CONLEY & KIM CONLEY,

      Plaintiffs,

vs.

                                          Case No.  8:08-cv-1793-T-24-MAP

CITY OF DUNEDIN, FL and ITS CODE
ENFORCEMENT BOARD,

      Defendants.

_____/

### ORDER

      This cause comes before the Court on Defendants' 12(b)(6) motion to dismiss the Complaint for failure to state a claim**.** (Doc. 18.) Plaintiffs oppose the motion. (Doc. 23.)

### I. STANDARD OF REVIEW

      In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000) (citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citation omitted).  As such, a plaintiff is required to allege "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II. BACKGROUND

### a. The Truck

Plaintiffs planned to purchase a commercial vehicle which Mr. Conley would presumably use in his work. Before purchasing, they asked Mr. Leavengood, identified as both the "Code Enforcement Department head" and a City "code inspector," if the truck would violate Dunedin Code UDC Section 134.239. This ordinance placed height restrictions on commercial vehicles parked on residential property. Mr. Leavengood gave them written assurance that they could park a certain truck on their property, despite the fact that the truck would slightly exceed the height limit. Plaintiffs purchased the vehicle in reliance on this statement.

After several months of parking the noncomplying truck on their property, Plaintiffs received a violation notice on January 17, 2006 ordering them to correct the violation by January 28, 2006. Mr. Conley reminded Mr. Leavengood that he had given his pre-approval of the truck, and in response, Mr. Leavengood amended the correction deadline to "open until decided by the City Attorney."

Months later, after inquiring with and receiving no answer from the City Attorney, Mr. Conley inquired of Mr. Leavengood as to the status of the decision regarding his vehicle. Mr. Leavengood did not respond. Instead, the City sent Plaintiffs another violation notice. This notice explained that the Code Enforcement Board would hold a hearing on May 2, 2006 to determine whether Plaintiffs had in fact violated the ordinance, and Plaintiffs would be able to obtain counsel for the hearing. Plaintiffs hired an attorney, John Shahan, the same attorney representing them in this suit.

Plaintiffs' attorney was unavailable on May 2, so on April 30, 2006, he requested in writing that the City postpone the May 2nd hearing until July 11, 2006. An unnamed City employee orally assured counsel that if he did not hear by the end of the day on April 30 that the continuance was denied, then the continuance had been approved. Counsel did not hear back from Defendants by April 30th. Consequently, he and Plaintiffs wrongly believed that Defendants had postponed the May 2nd hearing. Defendants held the hearing without them and sent Plaintiffs a letter notifying them that the continuance request had been denied on May 8th (six days after the hearing).

At the hearing, Defendants found Plaintiffs' truck to be in violation of the height restriction ordinance and ordered Plaintiffs to correct the violation by May 19, 2006 or they would incur a fine. The finding of violation was based solely on an affidavit of noncompliance provided by Mr. Leavengood. Plaintiffs received a letter from Defendants on May 11th notifying them of the Board's order. The letter informed Plaintiffs that if they did not correct the violation by May 19th, they would be fined $50.00 per day thereafter. Defendants did not provide Plaintiffs a detailed order containing findings of fact or conclusions of law.

Plaintiffs appear to allege that they (but not counsel) were notified that Defendants would hold another hearing on June 6th, 2006 to determine whether Plaintiffs had complied with the order to correct the violation, for which Plaintiffs requested a continuance, this time until July 11th.  Defendants refused to grant the continuance and held the June 6th hearing without Plaintiffs or their attorney.  At this hearing, Defendants entered an order imposing a continuing $50.00 fine (operating as a lien on the property), beginning on May 19th, for Plaintiffs' failure to comply with its prior order to correct the violation.  Plaintiffs allege that there are other commercial vehicles in their neighborhood that violate the height restriction whose owners have not been fined.

### b.  The Shed

Some time after the citation for the truck violation, Mr. Conley was notified on an unidentified date that a manufactured shed in his backyard violated a City ordinance requiring residents to receive permits before building such structures.  Defendants found Plaintiffs to have violated the building ordinance during the same May 2nd hearing in which it found Plaintiffs to have violated the vehicle-height restriction.  Defendants imposed a fine for the shed violation at the same time they imposed the fine for Plaintiffs truck.  Like the truck fine, the shed fine was for $50 per day and operated as a lien on Plaintiffs' property

Plaintiffs admit that they did not have a pre-build permit, as required by City ordinance, prior to putting the shed on their property.  Before Defendants imposed the fine, however, Plaintiffs requested a post-build permit from Defendants to avoid the penalty.  Defendants refused to give them the permit.  Plaintiffs claim that a neighbor was granted a post-build permit for an identical shed.

Further, Plaintiffs allege that Defendants only discovered the shed because Mr. Leavengood had entered Plaintiffs' fenced-in property without either a search warrant or their consent. Leavengood's intrusion presumably occurred some time between when he assured Plaintiffs that they would be able to park the noncomplying vehicle and when Defendants held their May 2nd hearing.

To date, the combined fines for the truck and shed violations have totaled over $50,000.00.

### c. Outlining the Complaint

Plaintiffs filed an eight count complaint contesting the above treatment. In Count I, Plaintiffs assert that Defendants, through various actions under color of law, deprived Plaintiffs of several rights conferred by the United States Constitution, in violation of 42 U.S.C. § 1983. In Count I, Plaintiffs allege violations of procedural due process,[1] equal protection, and the proscription against excessive fines.

Count II seeks a declaration that the City violated Plaintiffs' procedural due process rights conferred by the Florida Constitution.

Count III restates Plaintiffs' federal § 1983 procedural due process claim from Count I, seeking a declaratory judgment and damages for the violation.

Similarly, Count IV requests an injunction for a violation of Plaintiffs' Florida procedural due process rights, and Count V seeks the same remedy under the federal Constitution.

In Count VI, Plaintiffs request a declaration that Florida Statutes § 162.09(1) is facially

---

[1] To the extent that Plaintiffs allege any violation of their Sixth Amendment right to counsel (and it is very unclear if they do), it will be treated as an argument bolstering their procedural due process claim, as it is otherwise impotent.

unconstitutional under both the Florida and federal constitutions as violative of their respective guarantees of procedural due process. Count VII seeks an injunction against enforcing the statute on the aforementioned basis.

Count VIII seems to both allege another § 1983 violation, based on the federal Fourth Amendment's proscription against unreasonable searches and seizures and seek a declaration that Defendants violated the same right conferred by the Florida Constitution's Fourth Amendment.

### III.  DISCUSSION

It is first necessary to identify the specific claims alleged so that the Court may systematically analyze them. The Court will resolve all doubts in favor of the Plaintiffs and recognize specific claims when reasonably inferred from the entirety of the complaint.

### a.  Federal Claims

Plaintiffs bring several causes of action through 42 U.S.C. § 1983, and they also challenge the constitutionality of a Florida statute on its face.

#### 1.  *Section 1983*

The Court begins by analyzing Plaintiffs' several claims under § 1983. Plaintiffs allege that various actions by Defendants constituted violations of: 1) procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution; 2) equal protection under the same Amendments; 3) the Eighth and Fourteenth Amendments' proscription against excessive fines; and 4) the Fourth and Fourteenth Amendments' proscription against unreasonable searches and seizures.

Title 42 U.S.C. § 1983 does not create substantive rights, but merely allows a plaintiff a

way to vindicate federal rights that have already been recognized.  Albright v. Oliver, 510 U.S.

266, 271 (1994).  Specifically, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Local governments are "persons" that can be sued under § 1983.  See, e.g., Monell v. Dept. of

Soc. Servs. of City of New York, 436 U.S. 658 (1978).

Plaintiffs allege that Defendants, through several actions performed under color of law,

deprived Plaintiffs of various rights conferred by the United States Constitution.  Therefore,

Plaintiffs must allege that every action taken by Defendants 1) was "under color" of law as

defined by § 1983, and that each action 2) deprived them of a specific right conferred by the

federal Constitution.

A municipality is only liable under § 1983 if it is found to have *itself* caused a

constitutional deprivation - it cannot be held vicariously responsible under a theory of

*respondeat superior*.  Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing

Monell, 436 U.S. at 694-95).  Thus, a plaintiff must first show that the alleged injury resulted

from the execution of a municipality's policy, id., or its custom, Grech v. Clayton County, 335

F.3d 1326, 1229 (11th Cir. 2003) (citing Monell, 436 U.S. at 690-91).

There is no question that the City can be held liable under § 1983 for the enforcement of

its officially promulgated ordinances.  See, e.g., Brown v. Neumann, 188 F.3d 1289, 1290 (11th

Cir. 1999).  Thus, because all but one of Plaintiffs' § 1983 claims involve such action,

Defendants' argument that Plaintiffs insufficiently alleged the "under color of law" prong for all

of their § 1983 claims is without merit. Plaintiffs' search and seizure claim is more problematic, and it will be discussed below.

The Court analyzes each of Plaintiffs' § 1983 claims in turn to determine whether Plaintiffs have sufficiently alleged that each action 1) was under color of law, and 2) deprived them of a specific federal Constitutional right.

A. Procedural Due Process

(Counts I, III, and V)

Plaintiffs claim that the City deprived them of procedural due process guaranteed by the federal Constitution, by fining them for the height of Plaintiffs' vehicle without providing a sufficient hearing. Plaintiffs' procedural due process allegations cannot prevail.

To prove a violation of procedural due process under § 1983, a plaintiff must show (1) deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. Foxy Lady, Inc. v. City of Atlanta, 347 F.3d 1232, 1236 (11th Cir. 2003). However, a federal court plaintiff can only show constitutionally inadequate process when the state does not offer an adequate post-deprivation remedy. McKinney v. Pate, 20 F.3d 1550, 1562-63 (11th Cir. 1994) ("even if McKinney suffered a procedural *deprivation* . . . , he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation" (emphasis in original)); Foxy Lady, 347 F.3d 1232. A plaintiff must allege the unavailability of state remedies in the complaint. "Procedural due process violations do not even exist unless no adequate state remedies are available." Cotton v. Jackson, 216 F.3d 1328, 1331 n.1 (11th Cir. 2000).

The McKinney plaintiff, for example, attempted to sue a board of county commissioners

under § 1983 for violating his federal procedural due process rights when it terminated his

employment.[2]  20 F.3d at 1555.  The court found no federal procedural due process violation.  Id.

at 1564.  Specifically, it found that Florida offered an adequate post-deprivation remedy because

the Florida courts would have reviewed the board's decision and addressed McKinney's

procedural due process claims.  Id. at 1563-64.  Thus, because McKinney could not show that

the state of Florida had completely deprived him of his federal procedural due process rights, his

§ 1983 claim failed.  Id.

> [T]he McKinney rule looks to . . . whether the state courts, if asked, generally would
> provide an adequate remedy for the procedural deprivation the federal court plaintiff
> claims to have suffered.  If state courts would, then there is no federal procedural due
> process violation regardless of whether the plaintiff has taken advantage of the state
> remedy or attempted to do so.

Foxy Lady, 347 F.3d at 1238-39 (quoting Horton, 202 F.3d at 1300) (internal quotation marks

omitted).

Thus, the issue here is not whether Plaintiffs actually availed themselves of Florida's

post-deprivation remedies, but whether Florida would offer such remedies if it were asked. For

this reason, Plaintiffs' federal procedural due process claims fail.  The state of Florida allows

aggrieved parties to appeal "final administrative orders of an enforcement board to the circuit

court."  Fla. Stat. § 162.11.  This appeal considers the record as well as the constitutionality of

the proceedings.  Thus, Florida clearly  provides a remedy for deprivations of procedural due

process resulting from a code enforcement order.  Because Plaintiffs' complaint fails to allege

that this available remedy was inadequate, they fail to properly state a federal procedural due

---

[2] McKinney initially brought a substantive due process claim under § 1983, but the court
found that his claim was more appropriately considered as one alleging a violation of procedural
due process.  20 F.3d at 1560-61.

process claim under § 1983.[3]  Thus, Plaintiffs' § 1983 federal procedural due process claims asserted in Count I, as well as all of Counts III and V are dismissed.

B.  Excessive Fines

(Count I)

Plaintiffs next contend that the City violated the Eighth and Fourteenth[4] Amendments to the United States Constitution by imposing excessive fines for the truck and shed violations.  This claim is sufficiently stated.

First, it is beyond question that the Defendants' imposing a fine pursuant to its ordinance is an action "under color" of law as defined by § 1983.

Whether Plaintiffs have sufficiently alleged the constitutional deprivation prong is a more difficult question, however.  Although there is a lack of case law on point, federal courts have extended the Eighth and Fourteenth Amendments' proscription against excessive fines to city ordinances that impose fines on their violators.  Singh v. City of Oakland, 295 Fed. Appx. 118 (9th Cir. 2008) (implying that a complaint may allege that city ordinance imposing excessive fines violates the Eighth Amendment); Towers v. City of Chicago, 173 F.3d 619 (7th Cir. 1999) (holding that excessive fines clause of Eighth Amendment applied to a city ordinance imposing fines on violators); see DeWeese v. Town of Palm Beach, 616 F. Supp. 971 (S.D. Fla. 1985),

---

[3]Although Plaintiffs mention that they were not provided a "detailed" order from the City's initial May 2nd hearing with which to appeal to state circuit court, this argument is insufficient.  Defendants' failure to provide "findings of fact or conclusions of law" is only but a part of the alleged procedural due process violation that the circuit court would consider when reviewing their decision.

[4] The Eighth Amendment's proscription against excessive fines applies to the states through the Due Process Clause of the Fourteenth Amendment.  Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 434 (2001).

*reversed on other grounds*, 812 F.2d 1365 (11th Cir. 1987) (applying the Eighth Amendment to an ordinance imposing fines on violators).

Thus, the Eighth Amendment's mandate against excessive fines may apply to the City's assessments against the Plaintiffs. However, Plaintiffs must allege 1) that the assessments are "fines" as defined by the Eighth Amendment; and 2) that the fines are excessive. Wright v. Riveland, 219 F.3d 905, 915 (9th Cir. 2000) (citing Austin v. United States, 509 U.S. 602, 622 (1993)); see also United States v. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d 1304, 1309 (11th Cir. 1999) (criminal defendant challenging forfeiture must prove that forfeiture 1) is a "fine" and 2) is "excessive").

An assessment is a "fine" within the meaning of the Eighth Amendment when its purpose is at least *"in part* to punish." Austin, 509 U.S. at 610 (emphasis added); see United States v. Dean, 87 F.3d 1212, 1212 (11th Cir. 1996) (forfeiture constituted punishment because it was not "solely" remedial). In other words, a sanction falls under the Eighth Amendment when it "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." Austin, 509 U.S. at 610 (internal quotation marks and citation omitted). The Eleventh Circuit has held, for example, that civil forfeitures are clearly partly punitive "where the value of forfeited property bears no relationship to the government's costs."[5]

Although the Eleventh Circuit has not yet considered whether monetary penalties for ordinance violations are "fines" under the Eighth Amendment, the Seventh Circuit has, and its

---

[5] It should be noted that the Eleventh Circuit later held, without formally overruling Dean, that civil forfeitures are not "fines" subject to the Eighth Amendment. See U.S. v. Land, Winston County, 221 F.3d 1194, 1199 (2000). Nevertheless, to the extent that Dean's reasoning informs the distinction between "remedial" and "punitive," it is still informative.

reasoning is similar to that used by the <u>Dean</u> court. <u>See</u> <u>Towers</u>, 173 F.3d 619. In <u>Towers</u>, a city imposed a one-time $500 penalty on the plaintiff pursuant to an ordinance that allowed it to penalize vehicle owners when their vehicles were found to contain illegal drugs. <u>Id.</u> at 621-22. The Seventh Circuit found that the city's assessment was a "fine" because it was not solely remedial. <u>Id.</u> at 624. The court emphasized that the penalty did not compensate the city for any loss caused by the violation. <u>Id.</u> Instead, it found that the assessments, "at least in part, serve the punitive purpose of deterring owners from allowing their vehicles to be used for prohibited purposes." <u>Id.</u> Consequently, the court found that the city's penalty against the plaintiff was subject to the Eighth Amendment.[6]

Defendants argue that the Eighth Amendment should not apply because its assessments against Plaintiffs are remedial and thus not "fines" under the Eighth Amendment. However, a fair reading of the complaint shows that Plaintiffs have pled that Defendants' assessments are not *solely* remedial. Plaintiffs allege in their complaint that the "daily fine has no rational relationship to any alleged harm to the City or its citizens." Thus, Plaintiffs have sufficiently alleged that the penalties here are "fines" subject to the Eighth Amendment's proscriptions.

Next, Plaintiffs must sufficiently allege that these "fines" are excessive. However, because Defendants do not argue that Plaintiffs have insufficiently pled this point and because it is a highly fact-based issue, it will not be addressed here.

Because the City's assessments against Plaintiffs for ordinance violations are "fines" as defined by the Eighth Amendment, Plaintiffs' excessive fines claim alleged in Count I survives dismissal.

---

[6] The court later found that the fines were not excessive. <u>Towers</u>, 173 F.3d at 626.

<u>C. Unreasonable Search and Seizure</u>

(Count VIII)

Next, Plaintiffs allege through § 1983 that Defendants, acting under color of law, deprived them of their right to be free from unreasonable searches and seizures under the Fourth and Fourteenth[7] Amendments to the United States Constitution. Specifically, Plaintiffs allege that Mr. Leavengood entered their private property without consent or probable cause to discover Plaintiffs' non-complying shed, for which the City fined them.

Defendants argue that Plaintiffs' Fourth Amendment claim should be dismissed because Mr. Leavengood's alleged entry into Plaintiffs' property did not constitute an action "under color" of law as defined by § 1983. Specifically, they contend that Plaintiffs have not alleged that Leavengood's actions amounted to municipal "policy" necessary to subject the City to liability under § 1983. They are correct.

As discussed above, a municipality is only subject to § 1983 liability if it is found to have itself caused the alleged constitutional deprivation – a city cannot be liable under *respondeat superior*. <u>Monell</u>, 436 U.S. 658; <u>Skop</u>, 485 F.3d 1130, 1145 (11th Cir. 2007). In other words, a city cannot be responsible under § 1983 for the actions of its employees unless those actions amount to municipal "policy." <u>Monell</u>, 436 U.S. 658; <u>Skop</u>, 485 F.3d at 1145. An employee's action does not amount to municipal "policy" unless the official has "final policymaking authority" over the relevant subject matter, <u>Cooper v. Dillon</u>, 403 F.3d 1208, 1221 (11th Cir. 2005), or if the City ratified the official's actions, <u>Garvie v. City of Ft. Walton Beach</u>, 366 F.3d 1186, 1189 (11th Cir. 2004). However, the municipality must ratify not only the official's

---

[7] The Fourth Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment. <u>Mapp v. Ohio</u>, 367 U.S. 643, 655 (1961).

action, but its unconstitutional foundation. Id.; Gattis v. Brice, 136 F.3d 724, 727 (11th Cir. 1998) (finding no ratification because there was no evidence that final policymaker was aware of official's improper motives).

Nowhere does Plaintiffs' complaint allege that Mr. Leavengood possessed final policymaking authority with respect to the means by which the City obtained information regarding code compliance. Nor do Plaintiffs claim that the City ordered Mr. Leavengood to enter their property without their consent. Thus, Plaintiffs insufficiently allege that Mr. Leavengood's actions constituted official policy necessary to hold the City responsible under § 1983. Although the complaint identifies Mr. Leavengood as the "Code Enforcement Department head," it also identifies him as a "code inspector" and otherwise makes clear that it was the City Code Enforcement Board that was ultimately responsible for enforcing the City's ordinances. Thus, it is not reasonable to infer that, by Leavengood's title alone, Plaintiffs have alleged that he enjoyed a position of final policymaking authority. Such authority is conferred by law, not title, and Plaintiffs provide nothing to support the notion that Mr. Leavengood had the final say with respect to code enforcement. At the most, Plaintiffs have merely alleged that a city employee committed a constitutional violation while on the job. Without anything more, the complaint attempts to hold Defendants vicariously responsible on a theory of *respondeat superior*. Section 1983 does not allow Plaintiff to reach the city through such a path.

Nor is it reasonable to infer an allegation of ratification. Although Plaintiffs allege that the Code Enforcement Board "based its decision on fruits from the poisonous tree" by using the information Leavengood obtained when it cited Plaintiffs for the shed violation, they never claim that any member of the Board was aware that Leavengood had obtained his information

improperly.  Thus, Plaintiffs insufficiently allege that Defendants ratified the unconstitutional basis of Leavengood's actions.

Therefore, because Plaintiffs have insufficiently pled a constitutional deprivation under the Fourth Amendment, Count VIII is dismissed.

.

## 2. *Federal Constitutionality of Height-Restriction and Building-Permit Ordinances*
### (Count I)

Plaintiffs challenge the constitutionality of the City's height restriction and building permit ordinances.  Plaintiffs raise both facial and as-applied challenges with regard to the vehicle ordinance, and an as-applied challenge to the building permit law.  Both challenges are based on equal protection.  While the facial challenge to the vehicle ordinance fails, the as-applied claims are sufficiently stated.

### A.  Facial Challenge to the Height Restriction

Plaintiffs allege that the City's ordinance placing a height restriction on commercial vehicles parked in residential districts amounts to an action under color of law that deprives them of their equal protection rights conferred by the Fifth and Fourteenth Amendments to the United States Constitution.

While not entirely clear, it seems that Plaintiffs allege that the height-restriction ordinance discriminates either between trucks parked in residential districts and those in commercial districts, or between older and newer models of trucks.  Ordinances that discriminate between similarly situated classes are subjected to a very liberal "rational basis" standard when they do not affect an historically suspect class or infringe on a fundamental right.  E.g., Houston

v. Williams, 547 F.3d 1357, 1363 (11th Cir. 2008). Plaintiffs concede that the rational basis standard applies and nowhere allege that they are members of a suspect class or that the ordinance infringes on a fundamental right.[8] Thus, Plaintiffs' facial challenge can only survive Defendants' motion to dismiss if there are some set of facts that may show that the ordinance could not satisfy the lenient rational basis test. It is almost certain that they cannot show this.

Under the rational basis test, the challenged classification only need be rationally related to some conceivable legitimate state interest. E.g., Panama City Med. Diagnostic Ltd. v. Williams, 13 F.3d 1541, 1545 (11th Cir. 1994). Thus, the first step to any rational basis analysis is to determine whether the challenged classification could have been created to serve some conceivable legitimate purpose. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995). In fact, this purpose need only be one "which the enacting government body *could* have been pursuing. The *actual* motivations of the enacting governmental body are entirely irrelevant." Id. (emphasis in original). Thus, this Court can hypothesize as to the City's conceivable purposes behind imposing height restrictions. See id.

It seems entirely conceivable that the City of Dunedin could have created the height restriction ordinance in an attempt to preserve the residential character of its neighborhoods, and such a purpose has been recognized as legitimate by the Eleventh Circuit. See. e.g., Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1214 (11th Cir. 1995) ("it is well settled that

---

[8] Plaintiffs' complaint mentions that the ordinance prevents Mr. Conley from pursuing a lawful occupation, but this is not considered a fundamental right. See Jones v. Bd. of Comm'rs of Ala. State Bar, 737 F.2d 996, 1000 (11th Cir. 1984) (finding that the United States Supreme Court has never recognized the right to pursue an occupation as a fundamental one and has instead applied the rational basis test when dealing with this right).

the maintenance of community aesthetics is a legitimate government purpose."[9]). In addition, it is possible that a distinction between older and newer truck models might have been made in order to lessen the burden of the regulation on those already owning vehicles, by phasing in the regulation with time. Or, it is conceivable that those issuing the ordinance believed older models of truck designed for private—as opposed to occupational—use were taller than current models of truck designed for personal-use, and thus the older trucks might possess a more residential flavor, despite their height. Because rational explanations for the ordinance are conceivable, the ordinance satisfies the first prong of the rational basis test, as it could conceivably be meant to achieve a legitimate government purpose.

The second step in any rational basis analysis is to determine whether the governmental body could have rationally believed that its classification would further the hypothesized legitimate purpose. Haves, 52 F.3d at 922. Again, "the proper inquiry is concerned with the *existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body." Id. (emphasis in original). In other words, as long as the conceivable relationship between the classification and its purpose "'is not so attenuated as to render the distinction arbitrary or irrational,' the legislation survives rational-basis scrutiny." Id. (quoting Nordlinger v. Hahn, 505 U.S. 1, 11 (1992)). Thus, because the government body need not have actually considered any given rational basis for its classification, this Court may attempt to "ascertain" a conceivable one. See id.; Nordlinger, 505 U.S. at 12 ("we have no difficulty ascertaining at least two rational or reasonable considerations [for the classification]").

---

[9] Although Restigouche involved a substantive due process challenge, the rational basis test is identical for substantive due process and equal protection challenges. Grant v. Seminole County, 817 F.2d 731, 735 (11th Cir. 1987).

This Court can rather easily recognize that the City could have rationally believed that the height restriction, including the disparate treatment of trucks based on age or zoning location, would further its legitimate purpose of preserving the residential character of its neighborhoods. The City, for instance, could have rationally believed that vehicles standing above eight feet might obstruct a neighbor's view, or it could have postulated that such vehicles would be unsightly eyesores that would detract from the neighborhood's aesthetic charm. The City need not have actually relied on either justification; it is only important that it *could* have. Thus, because Plaintiffs' facial challenge to the City's vehicle-height restriction fails to state claim, that portion of Count I is dismissed.[10]

## B. As-Applied Challenge to the Height Restriction

Plaintiffs also contend that the City unequally enforced its vehicle-height restriction by citing Plaintiffs while not citing other similarly situated truck owners in the neighborhood. This as-applied equal protection challenge is sufficiently stated.

An individual need not be a part of a class or group to claim an equal protection violation. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). When Plaintiffs do not fall into a larger class, they can make a claim by pleading sufficient facts to demonstrate they are in a "class of one" and that they were intentionally treated differently from others similarly situated, and the distinction is not founded on a rational basis. Id. (holding that a plaintiff alleging that a state action was motivated by spite toward her had sufficiently pled an equal protection claim). In these "class-of-one" cases, the plaintiff must show: (1) that he was treated differently from

---

[10] It is unclear whether Plaintiffs raise a facial substantive due process challenge against the ordinance as well, but because the analysis would be the same as that above, any such claim is also dismissed.

other similarly situated individuals, and (2) that the defendant unequally applied a facially [valid] ordinance for the purpose of discriminating against him. Leib v. Hillsborough County Pub. Transp. Comm'n, ___ F.3d ___, 2009 WL 399990, at *1 (11th Cir. 2009) (quotations omitted); Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1045 (11th Cir. 2008).

With respect to the first prong, Defendants argue that Plaintiffs' as-applied challenge should be dismissed because they fail to specifically allege that they have been treated differently from other similarly-situated individuals. Specifically, Defendants rely on the heightened pleading standard imposed by GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359 (11th Cir. 1998). There, the Eleventh Circuit held that the district court should have dismissed the plaintiff's class-of-one equal protection claim because the plaintiff had failed to allege a specific instance in which it had been treated differently from similarly situated individuals. Id. at 1367. "Bare allegations that 'other' applicants . . . were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the plaintiff." Id. at 1367-68. Defendants argue that Plaintiffs' class of one claim should be dismissed, then, because "Plaintiffs present not a single instance in which a similarly-situated owner of a commercial vehicle over eight feet in height was allowed to park the vehicle on his property."

But Defendants misapply GJR. Unlike GJR, Plaintiffs do not merely allege that "others" were not cited by the City without specifying that these others were similarly situated to them. To the contrary, the complaint clearly states that "*work* trucks over 8 feet high produced by Chrysler, Ford, and Chevrolet" have not been cited by the City despite violating the commercial vehicle height restriction. (emphasis added). Because it can be reasonably inferred that by "work

truck," Plaintiffs mean to say that the other vehicles are also "commercial" within the meaning of the ordinance, the face of the complaint can be fairly read to allege that Plaintiffs are similarly situated to those neighbors who also violate the commercial vehicle height restriction but have not been cited for it. Thus, Plaintiffs have sufficiently pled the first prong of their class of one equal protection challenge.

Plaintiffs have also sufficiently plead the second prong of the claim: discriminatory intent, or disparate treatment on an irrational basis. To properly prove discriminatory intent, an equal protection plaintiff must show that the decision-making body "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its [adverse effects]." Crum v. Alabama, 198 F.3d 1305, 1319 (11th Cir. 1999) (quotations omitted). However, discriminatory intent can be found even where the record does not contain direct proof that the decision-makers harbored an evil motive. Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993); Williams v. City of Dothan, 745 F.2d 1406, 1414 (finding that binding former Fifth Circuit precedent "has long recognized" that the record need not reveal direct evidence of discriminatory intent). Specifically, several factors can indicate discriminatory intent, including: "(1) *the disparate impact of the official action*; (2) the historical background of the decision; (3) *the specific sequence of events leading up to the challenged decision including the decision-maker's departure from its procedural norms*; and (4) the legislative or administrative history." Crum, 198 F.3d at 1319 (emphasis added).

Defendants note that Plaintiffs' complaint nowhere specifically alleges that the City harbored a discriminatory intent when it chose to cite them and not other violators. However, a proper liberal reading of the complaint in a light most favorable to Plaintiffs reveals that they plead this prong sufficiently to survive dismissal.

20

As discussed above, Plaintiffs have sufficiently alleged the disparate impact of the City's unequal enforcement. Further, a liberal reading of the entire complaint also reveals that Plaintiffs may be able to show that the events leading up to the City's decision demonstrate a discriminatory motive. Specifically, when reading the complaint in a light most favorable to Plaintiffs, the City first gave Plaintiffs express permission to park their truck with the knowledge that they would rely on such in spending significant sums in purchasing and refurbishing the vehicle. The City then retracted its employee's relied-upon pre-approval for Plaintiffs' truck without citing any others for the same violation. In the meantime, a City official breached Plaintiffs' fenced-in private property to discover a non-complying shed identical to an un-penalized neighbor's shed. Defendants then gave Plaintiffs the impression that they would delay a hearing regarding both violations until Plaintiffs' attorney was available. Nevertheless, the City held the hearing without them and decided there to impose a daily fine on Plaintiffs for both the vehicle and shed violations. In short, although Plaintiffs nowhere explicitly allege discriminatory intent, a fair reading of the complaint indicates that Plaintiffs intend to present facts that can illuminate such purpose. This conclusion may be arguable, but the very fact that it can be argued mandates that the claim should not be dismissed.

Consequently, Plaintiff's truck-related as-applied equal protection claim alleged in Count I survives the City's motion to dismiss.

## C. As-Applied Challenge to the Building-Permit Ordinance.

Plaintiffs also allege that the City unequally enforced its building permit policy. Specifically, Plaintiffs claim that the City refused to issue them a post-build permit for their shed, even though it issued one to a neighbor who owned the other half of the same shed.

This claim should survive dismissal if the Court applies the reasoning that sustains Plaintiffs' claim regarding the enforcement of the vehicle-height restriction. Specifically, because the complaint alleges that Plaintiffs and their neighbor owned two halves of the same shed, it can be reasonably inferred that they were similarly situated with regard to the permit policy. Further, the previous discussion of the events leading up to the citation and fine can be read to support a pleading of discriminatory intent as to the enforcement of the building permit law as well.

Thus, Plaintiffs' as-applied equal protection challenge to the vehicle-height and build-permit ordinances in Count I are sufficiently pled to survive Defendants' 12(b)(6) motion.

### 3. *Federal Constitutionality of Florida Statutes § 162.09(1)*

### (Counts VI and VII)

Finally, Plaintiffs challenge the facial constitutionality of Florida Statutes § 162.09(1) for depriving them of procedural due process as conferred by the Fifth and Fourteenth Amendments to the United States Constitution. This claim fails.

The statute in question gives local enforcement boards the authority to assess fines on those who have failed to comply with their orders. It reads in pertinent part:

> An enforcement board, upon notification by the code inspector that an order of the enforcement board has not been complied with by the set time or upon finding that a repeat violation has been committed, may order the violator to pay a fine in an amount specified in this section . . . . *If a finding of a violation . . . has been made as provided in this part, a hearing shall not be necessary for issuance of the order imposing the fine.*

Fla. Stat. § 162.09(1) (emphasis added).

Plaintiffs' complaint alleges that the italicized provision deprives violators of their federal due process rights by allowing a local enforcement board to assess fines without first offering a hearing. Defendants have moved to dismiss the claim, arguing that the state of Florida has already given the statute a constitutional construction.

A *pre*-deprivation hearing is not required in all cases, especially when there is some pre-deprivation process provided. <u>See</u> <u>Mackey v. Montryum</u>, 443 U.S. 1, 13 (1979). The law at issue does not proscribe a pre-deprivation hearing, it does not address a post-deprivation hearing, and it says nothing about what other process prior to the deprivation is required. Thus, facially, it does not mandate anything prohibited nor does it proscribe anything vital. It is therefore capable of a constitutional construction.[11] Plaintiffs' federal facial challenge to Fla. Stat. § 162.09, asserted in Counts VI and VII, is accordingly dismissed.

### b. State Law Claims

Plaintiffs allege several state claims. First, they claim that Defendants deprived them of procedural due process rights provided by the Florida Constitution (Counts II and IV). Second, they attack § 162.09(1) of the Florida Statutes on its face for depriving them of their state procedural due process rights (Counts VI and VIII). Finally, they allege that Defendants violated their Florida constitutional right to be free from unreasonable searches and seizures (Count VIII).

Defendants do not move to dismiss these claims based on their substance. Instead, they argue that after each of Plaintiffs' federal claims is dismissed, this Court will no longer have

---

[11]Further, it should be noted that under the facts pled by Plaintiffs, they were (twice) afforded the opportunity to appear at a pre-deprivation hearing. Thus, it would be improper for the Court to rule in this case as to whether § 162.09 could, in another case, work as a barrier to the opportunities actually afforded Plaintiffs.

jurisdiction to hear the state claims. However, because some of Plaintiffs' federal claims survive, this Court exercises its supplemental jurisdiction over the remaining state claims.

Because Defendants do not provide any substantive legal arguments on which to dismiss Plaintiffs' state claims, Plaintiffs state claims found under Counts II, IV, VI, VII, and VIII survive.

## CONCLUSION

Thus, it is ORDERED AND ADJUDGED that the following claims are dismissed:

- The § 1983 procedural due process claim under Count I;
- The facial constitutional challenge to the City's height restriction based on federal equal protection principles and brought under Count I;
- The federal Sixth Amendment claim under County II;
- The entirety of Counts III and V (which were based on federal procedural due process);
- The facial constitutional challenge to Florida Statutes § 162.09 brought under federal due process principles and asserted as part of Counts VI and VII;
- The § 1983 unreasonable search and seizure claim under Count VIII; and

This leaves standing:

- The as-applied constitutional challenge to the City's height-restriction and building permit ordinance, based on federal equal protection principles and brought under Count I;
- The § 1983 excessive fines claim under Count I;
- The state procedural due process claim under Count II;
- The entirety of Count IV (state procedural due process);
- The facial constitutional challenge to § 162.01 based on state due process rights brought under Counts VI and VII; and
- The state search and seizure claim under VIII.

DONE AND ORDERED this 25th day of March, 2009.

_Susan C. Bucklew_
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record.