IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
[TAMPA DIVISION]

| | |
|---|---|
| MICHAEL CONLEY and his wife <br> KIM CONLEY, <br><br> Plaintiff(s), <br><br> v. <br><br> CITY OF DUNEDIN, FLORIDA, <br><br> Defendant. | **Case No.: 8:08-cv-1793-T-24MAP** |

**PLAINTIFFS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT
WITH MEMORANDUM OF LAW**

COMES NOW Plaintiffs, Michael and Kim Conley, by counsel, and pursuant to Fed.R.Civ.P. 56, file their Motion For Summary Judgment as to some counts as there are no genuine issues of fact as to these counts and the Plaintiffs are entitled to summary judgment as a matter of law and for grounds will show:

**STATEMENT OF UNDISPUTED FACTS
REFERENCE COMMERCIAL VEHICLE CASE NO.: 6-09**

1. The Plaintiff Michael Conley is a licensed specialty contractor who owns residential homestead real property at 45 Squire Court in Dunedin Florida.

2. The Plaintiff(s) wanted to buy a commercial vehicle which Mr. Conley would use, in his handyman business, which he was concerned might violate the Dunedin Code UDC Section 134.239 as to height of a commercial vehicle in a residential area, as it was a few inches over the eight(8) foot requirement. See his deposition filed at pages 5-8.

3. So before he purchased said vehicle he met with The Code Enforcement Department and

1

      showed pictures of how his truck, while slightly over the height restriction, was shorter than more modern trucks allowed to be parked during non-working/non-business hours at other neighbor(s) residences.  He informed the city the standard Dodge Streeter vans from the factory are over nine(9) feet, while his van type he was looking for on E-bay was about eight(8) foot eight(8) inches which is smaller than the new Dodges.  See Mike Conley's deposition at pages <u>40-42</u>.

4. Because the purchase and refurbishing of said truck would be quite expensive he sought pre-approval from the City before purchase, and thus obtained a pre-purchase Affidavit of Compliance from the department orally okayed by Department head Kevin Campbell and signed by James Leavengood.  <u>See Michael Conley depo Exhibit #4</u>.

5. The City, through Mr. James Leavengood's, Code Enforcement Officer supervisor, said he could have that type of truck on the property, and it was approved by Leavengood, pre-purchase, in writing that he could use said vehicle in the city including parking it at his residential home, when not working in workday usage before and after work.  See executed Affidavit of Compliance of June <u>28</u>th, 2004, notarized July <u>15</u>th, 2004 (Mr. Conley depo Exhibit #<u>4</u>).  The only truck he sought an OK for was Blue when purchased and he still has it but the Affidavit does not note that because it was pre-approved after James Leavengood looked at pictures, and thus did not state a color or vin number.  As Campbell retired thereafter neither he nor Leavengood fixed the ambiguity in the Affidavit.

6. The usage and parking of said vehicle at his residence went on for many month(s), without incident, before Mr. Conley received a conflicting Violation Notice on January 17th, 2006, titled, Case No.: 06-09. He confronted Mr. Leavengood who sloughed off the change as "Oh well we changed our mind", until Mr. Conley reminded Leavengood he spent thousands refurbishing the van before it could be used, relying on Campbell and Leavengood's permission, and that it was shorter than new vans allowed by them in violation of the ordinance.

7. After Mr. Conley informed James Leavengood that he had given prior approval of the truck before purchase, and that he never actually measured it. He pled that the January 17th, 2006 Violation Notice violated the earlier city approval he relied upon before spending considerable money to remodel it. See Mike Conley depo, pages 42-55.

8. The Notice of Violation was then amended by Code Inspector Leavengood by amending the correction date from January 28th, 2006 to "open until decided by the City Attorney" with Leavengood initialing the Amendment. See Mr. Conley's deposition at pages 51-57 and the attached document, Exhibit #7 to his deposition.

9. Michael Conley was also verbally told he did not have to remove the vehicle while the issue of prior approval was being reviewed, by the City Attorney. Months went by.

10. In further pursuit of the process, Mr. Conley, months later, sought the City Attorney's answer by questioning Mr. Leavengood. Mr. Levengood never responded as to why the City Attorney still did not come forward with the promised letter interpreting the pre-purchase approval.

11. Instead, the City, without explanation, sent him a Notice of Violation Code Enforcement hearing which contained a right to obtain, at his expense, an attorney to represent him and present and cross-examine witnesses against him which Mr. Conley exercised, by hiring Attorney John A. Shahan an experienced government law attorney referred to Mr. Conley by a former client who sued Tarpon Springs. See attached Notice of hearing for May 2nd, 2006.

12. Mr. Conley, through counsel's letter to the City, stated he wanted counsel, and there were complex issues requiring counsel, but the <u>one day a month when the Board met</u>, was not possible due to Attorney John Shahan's conflicting prior trial commitments both on May 2nd, 2006 and on June 6th, 2006. Irma Smith, of the City's staff suggested July 11th, 2006 as the next available date, which was sent with the letter request and calender proof of two(2) conflicts.

13. Counsel requested orally and in writing, on April 26th, 2006 and again on April 27th 2006, a postponement until July 11th, 2006 due to these conflicts and said continuance would not prejudice the City as fines would accrue after the July hearing if the issue was not resolved in Mr. Conley's favor. No emergency need for the hearing on May 2nd, 2006 was suggested by the City, and in discovery there is no explanation for Irma Smith notifying counsel until days after May 2nd, 2006 that the hearing continuance was denied. Her records show she never polled the board in the five(5) days before the hearing.

14. Counsel's office was orally assured that a continuance would normally be granted, and if no word was received by April 30th, 2006 denying the continuance said continuance was approved. Irma Smith, although given the request April 26th, 2006, city records show she did not contact the board members for a vote on the motion until May 2nd, 2006 and failed to timely inform Plaintiffs of the denial of the continuance until days after the hearing took place. See attached Smith's 3 document(s).

15. In reliance on the City's, failure to timely advise a continuance was denied, both Mr. Conley and John A. Shahan did not attend the hearing scheduled on May 2nd, 2006, and Mr. Shahan conducted his previously scheduled court business.

16. Unexplainedly no fax written denial of the May 2nd, 2006 continuance was received but instead it was mailed arriving May 11th, 2006 which nullified any opportunity to challenge the denial by a timely appeal it to the Circuit Court, before May 2nd, 2009. See Attached.

17. The Board on only a contested Affidavit, from the Code Enforcement Board Inspector, found a violation even though no evidence was presented by James Leavengood or allowed as to the City's pre-purchase approval of the truck and residential parking of it, or the extension of permission written as continued until review by the city attorney. Thus, out of context evidence without full disclosure and the failure to allow Mr. Conley's counsel, to be present, by denying the Continuance without proper notice, resulted in an Order of Non-Compliance and daily fines against the Plaintiffs.

18. No opportunity to show a lack of safety issues or community harm or damage to any neighbor of the City by the truck being slightly oversized has resulted in continuing daily excessive fine violating the Eighth Amendment, against excessive fines and forfeitures. The orders clearly show no record of finding on the issue of excessive or reasonableness of the daily fines.

19. The Conley family received notice of a denial of the postponement too late on May 11th, 2006 by a letter Notice signed on May 8th, 2006 and delivered on May 11th, 2006, to contest denial of counsel which Dunedin's ordinance told them they had a right to have.

20. The letter contained No Order from the May 2nd, 2006 hearing as to the legal/factual basis for the Board's ruling only a conclusion of guilt if he did not comply with the Order by May 19th, 2006 as to the shed he would suffer a $\underline{100.00}$ a day fine thereafter.

21. No rationale was provided as to on what harm basis they decided to stop approval for the truck, in the driveway, in the neighborhood <u>before</u> work hours and <u>after</u> work hours created a public harm justifying a $\underline{50.00}$ a day fine thereafter, when the truck had no commercial signage.

22. With only a conclusionary guilt Order received there were no findings of fact or conclusions of law to challenge on an appeal to the Circuit Court. See Orders attached.

23. Mr. Conley informed the City the June 6th, 2006 2PM date, as to Compliance/Non-Compliance, violated his right to counsel as counsel was in another trial, yet the City stated that despite no counsel, which Mr. Conley had a right to, the City would not wait until July 11th, 2006 to hear his defenses to the violation allegation, and proceeded to a hearing again without him or counsel on June 6th, 2006. A fee of $\underline{50.00}$ per day continues to accrue.

**STATEMENT OF UNDISPUTED FACTS**
**REFERENCE THE SHED ISSUE-CASE NO.: 06-02**

24. Mr. Conley was also given a Violation Notice, 06-02 as to a new sturdy shed he installed without a permit to replace a failing shed.

25. Mr. Conley sought to pay a higher fee and stop any fines, for the shed, by getting a post-built permit which costs more money than a pre-build permit.

26. The City denied him a permit claiming the shed was not sturdy even though he showed them manufacturer's plans that the shed, built by others, met the 2005 Florida Building Code for a three second gust to 130 mph winds, when 123 was the legal minimum.

27. By this time Mr. Conley was questioning the City as to many other non-permitted sheds arguing equal protection defenses to treating others differently.

28. The City denied him his post-built shed permit, choosing, instead, to continue fining him, which was an arbitrary and capricious denial of his 14th Amendment equal protection rights.

29. No opportunity to show no damage to any neighbor by the un-permitted shed has resulted in a daily excessive fine violating the Eighth Amendment against excessive fines and forfeitures.

30. His neighbor, on the same street, who had the other ½ of the same exact shed was given a post-built building permit, showing the equal protection violation. Conleys fine of $100.00 per day continues to run.

**PLAINTIFFS' SUMMARY JUDGMENT ARGUMENT AS TO THE AS APPLIED CONSTITUTIONAL CHALLENGE TO THE HEIGHT RESTRICTION**

Plaintiffs respectfully move that this Court grant a Summary Judgment finding that there are undisputed material facts that show the City unequally enforced its vehicle-height restriction by citing Plaintiffs while not citing other similarly situated truck owners in the City and residential neighborhood. Michael Conley clearly showed through his deposition that although alerting the City that they needed to cite the new trucks that are nine(9) feet high, made by Dodge, Chrysler and Ford in the residential neighborhood, if citing him for eight(8) foot eight(8) inches, but they refused to do so.

An individual need not be a part of a class or group to claim an equal protection violation. <u>VII of Willowbrook</u> v. <u>Olech</u>, 528 U.S. 562, 564 (2000). He has shown a violation as to him alone. When Plaintiffs do not fall into a larger class, they can prove a claim by showing sufficient facts to demonstrate they are in a "*class-of-one*" and that they were intentionally treated differently from others similarly situated, and the distinction is not founded on a rational basis. <u>Id</u>. (Holding that a plaintiff alleging that a state was motivated by spite toward her had sufficiently plead an equal protection claim).

Here Conley has shown nine(9) foot new Dodge Sprinter, Chevy and Ford trucks are allowed to be owned by residents in his neighborhood, but his eight(8) foot eight(8) inches 1997 van is cited. See pictures attached.

In these "*class-of-one*" cases, the Plaintiffs have shown: (1) that they were treated differently from other similarly situated individuals, with even higher than nine(9) feet vehicles and (2) that the defendant unequally applied a facially [valid] ordinance for the purpose of discriminating against him. <u>Leib</u> v. <u>Hillsborough County Pub Transp. Comm'n</u>, F.3d, 2009 WL 399990, at #1 (11th Cir. 2009) (citations omitted); <u>Young Apartments, Inc</u>. v. <u>Town of Jupiter</u>, 529 F. 3d 1027, 1045 (11th Cir. 2008).

Plaintiffs, through Mike Conley, at the deposition, through pictures taken by Mr. Conley, showed that other owners, in Dunedin, of a commercial vehicles over eight(8) feet in height were allowed to park the vehicle on residential property overnight in Dunedin. Since then he has measured vans and provides the pictures herein.

Plaintiffs also have shown that "others" were not cited by the City and shown that these others were similarly situated to them as residing in Dunedin. Discovery evidence has shown clearly that "commercial" trucks over eight(8) feet high, in fact nine(9) foot high, described as a Dodge Sprinter van and vans by Chrysler, Ford, and Chevrolet" have not been cited by the City despite violating the commercial vehicle height restriction, since they are nine(9) feet high, while Mr. Conley's is only almost eight(8) foot eight(8) inches, this shows clearly just how unequal this is.

Plaintiffs review have shown that the other vehicles are also "commercial" within the meaning of the ordinance which is only based in height. Plaintiffs are therefore, similarly situated to those neighbors who also violated the commercial vehicle height restriction but have not been cited for it. Plaintiffs have proven the first prong of their *"class-of-one"* equal protection challenge.

Plaintiffs have also sufficiently proven the second prong of the claim: discriminatory intent, or disparate treatment on an irrational basis. To properly prove discriminatory intent, an equal protection plaintiff must show that the decision-making body "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its [adverse effects]." _Crum_ v. _Alabama_, 198 F.3d 1305, 1319 (11th Cir. 1999)(quotations omitted). However, discriminatory intent can be found even where the record does not contain direct proof that the decision-makers harbored an evil motive. _Elston_ v. _Talladega County Bd. Of Educ._, 997 F.2d 1394, 1406 (11th Cir. 1993).; _Williams_ v. _City of Dothan_, 745 F.2d 1406, 1414 (finding that binding former Fifth Circuit precedent "has long recognized" that the record need not reveal direct evidence of discriminatory intent). Specifically, several factors can indicate discriminatory intent, including"(1) the disparate impact of the official action; (2) the historical background of the decision; (3) the specific sequence of events leading up to the challenged decision including the decision-maker's departure from its procedural norms; and (4) the legislative or administrative history." See _Crum_ v. _Alabama_ at 198 F. 3d at 1319.

Defendants note that Plaintiff Michael Conley exercised his First Amendment rights when he sent a letter to the City as to the conduct of Mr. Leavengood which he felt was unfair and prejudicial. See June 30th, 2004 letter attached.

Mr. Conley testified thereafter, Leavengood harbored a discriminatory intent when he chose to cite their later blue truck and not other violators, and said "I told you I'd get you".


This was unfair unequal treatment. Even more telling of Mr. Leavengood's intentional discrimination is first approving the truck pre-purchase knowing thousands would be spent to refurbish the 1997 Van, but then saying "we changed our mind" when sloughing off his position change. See Conley Affidavit and deposition filed herein.

Plaintiffs have sufficiently proven the disparate impact of the City's unequal enforcement. Further, a review of the deposition of Mr. Conley also shows that the events leading up to the City's decision demonstrate a discriminatory motive. Specifically, the City first gave Plaintiffs express permission to park their truck, at home, with the knowledge that they would rely on such in spending significant sums in purchasing and refurbishing the vehicle. The City then retracted its employee's relied-upon pre-approval for Plaintiffs' truck without citing any others for the same violation. In the meantime, a City official breached Plaintiffs' fenced-in private property to discover a non-complying shed identical to an un-penalized neighbor' shed. Mr. Prindiville, admits in his depo at p. 21-25, the city could not see the Conley shed without a non-consensual entry, without a warrant.

Defendants then gave Plaintiffs the impression that they would delay any action until; the City attorney reviewed it and never submitted it to the attorney. They later stated they would delay a hearing until July 11th, 2009 regarding both violations until Plaintiffs' attorney was available, then denied the continuance, but didn't tell the Conleys of the denial until after the May hearing took place. Instead, the City held a hearing without them and decided then to impose a daily fine on Plaintiffs for both the vehicle and shed violations. See Orders filed by the City with their pleadings and Motion for Summary Judgment.

11

Discriminatory intent is clearly shown from the record. Irma Smith received faxes on April 26th and April 27th, 2009 seeking continuance to a date in July she said was available. However, <u>she didn't poll the Board timely before the hearing as to the "conflicting court matter" grounds for the continuance</u>, Then she failed to inform counsel by fax or phone of the denial, instead mailing a letter day(s) later when it was too late to do anything about it, such as appealing to the Circuit Court for a continuance order.

Consequently, Plaintiffs' truck-related as-applied equal protection claim should be found to have been proven and Summary Judgment granted to Plaintiffs.

## SUMMARY JUDGMENT ARGUMENT AS TO THE AS APPLIED CHALLENGE TO THE BUILDING PERMIT ORDINANCE AND NEW DEPOSITION EVIDENCE

Plaintiffs respectfully move that this Court grant a summary judgment in their favor as to the unequal application of the building permit ordinance to their shed.

Plaintiffs believe as shown by exhibits to the depositions of Susan and Michael Prindiville, filed at Docket #'s 53 and 54 by the defense and attached to their depositions, it is clear that Conley's post-built permit application was wrongfully treated unfairly, being denied, in violation of the equal protection clause. The Prindivilles received post-built permit approval for their shed.

It is clear that the two(2) sheds came from the same original manufactured shed. They were cut and distributed as two sheds, one lot apart in the same easement area. In fact, Mr. Conley's shed is positioned where it was permitted earlier as an older shed.

It is clear also through Conley's deposition testimony and the Prindiville's testimony, that the open side on their shed was enclosed and was rebuilt stronger than the original sides using materials Conley recommended and installed on both his shed and theirs with him assisting.

So structural soundness is a non-issue as outlined in the City's earlier Motion To Dismiss.

Mr. Fred Cardwell, Georgia engineer, for Handi House, got the state of Florida to approve the manufacturer's shed across the state under the Florida Manufactured Building Act as shown on Mr. Conley's depo, Exhibit <u>12</u>.

The same, Mr. Cardwell, <u>now also a Florida licensed engineer</u>, on September <u>23</u>$^{rd}$, 2005 approved the shed. He, on December <u>21</u>$^{st}$, 2006, reviewed in Florida the half owned by the Prindivilles as shown by deposition exhibits brought out, at the deposition, by both attorneys and filed by the defense with their Summary Judgment materials.

**SUMMARY JUDGMENT ARGUMENT REFERENCE
FINDING THE DAILY FINES ARE EXCESSIVE AS THE GRAVITY OF THE
OFFENSES IS LOW AND THE HARM TO THE CITY AND NEIGHBORS IS NONE**

The defense boldly suggested in their earlier Motion To Dismiss, pursuant to *Austin* v. *United States*, 113 S. Ct 2801 (1993) that this Court should not allow our Eighth Amendment excessive fine claim because in their opinion the civil code fines are only remedial, not punishment. That is not what's happened here.

Here, the Conleys were denied a post-built shed permit they requested and are still being fined. They are fined $100 per day for a shed, Prindivilles were only being fined $25 per day for. See attached Order re: Prindivilles.

They misread the case law because *Austin supra Korangy* v. *U.S.F.D.A.*, 498 F.3d 272 (2007) and *Thomas* v. *Commissioner*, 262 F.3d 97, 99 (4th Cir. 1995) stands for the position that if a fine is even partially punitive, then an 8th Amendment excessive fine ruling can be made, where the fine is grossly out of proportion to the gravity of the offense.

Here the city findings of fact made in the truck and shed orders do not find any harm to the public, city, or neighbors. The gravity of the offenses is low.

This Court should find as a matter of law that these daily fines are excessive. The Conleys are being fined for the shed because they did not have a pre-built permit when they replaced their rotting pre-existing shed with a manufactured one. Yet, the City won't give them a post-built permit like their neighbor who received one for the duplicate shed. Therefore, its certainly a punitive fine and never ending.

The 8th Amendment's purpose is to limit the government's power to penalize and punish. The Conleys, denied a post-built shed permit are being punished each day with a daily fine, while the neighbor is not. Even when fined, the Prindiville's daily rate was $<u>25</u>, not the $<u>100</u> daily rate the Conleys were billed. Mr. Conleyis punished for pointing out other unpermitted sheds as a defense. The shed fine is escalating daily as shown by City letters solely because the City won't issue a post-built permit. The two ordinances, as applied to the Conleys, violates the Eighth Amendment as it provides no upper cap as to a total fine.

Where's the proof of "never ending harm" to the neighborhood requiring a never ending fine from a backyard shed neighbors never see, that looks just like the other neighbors shed? If a City is never going to stop the fine, as it refuses a post-built permit request, then it's unreasonable, a punishment, and excessive.

The Eighth Amendment case law states that in determining whether a fine is excessive the Court needs to determine the "gravity" of the offense. A proportionality analysis needs to be done.

In F.S. §162.09(3) and Dunedin code section 2-80(a) the city's board should have considered the "gravity" of the offense, but failed to do so. See their Orders as Attachments "<u>D</u>" and "<u>E</u>" to our Response to the earlier Motion To Dismiss.

The orders on the vehicle and shed both are devoid of any specific findings as to gravity of offense and harm to anybody's health, safety or welfare.

A daily fine escalating without any findings of fact as to how a backyard shed or truck parked during non-work hours harm the citizens, without a cap on the fines, fails to meet requirements of the Eighth Amendment and is clearly excessive. This is especially true as to the vehicle.

As shown, without even a measurement, the City said Mr. Conley could avoid the code and issued a 2004 Affidavit of Compliance. In 2006 they reverse said ruling and find the truck in violation. They say the fine will not go into effect until the City Attorney issues an opinion suggesting why the truck is now out of compliance.

Although, they never have an Attorneys opinion letter of why the "substantially conforming truck" is no longer in compliance, they fine it anyway.

Since the Statute and Dunedin Code don't require a personal visit daily to validate the van's non-compliance, but just infer continued non-compliance no evidence exists to justify a continued fine. If the parties went on a 1 month vacation, did they stop the meter? It's sounds like punishment when the monetary fine is issued without a finding of harm to the citizen's health safety or welfare.

The Conley's are being punished when they sought a pre-purchase decision, bought the truck, only after the Affidavit of Compliance, the truck didn't change its size, yet two(2) year(s) later, in 2006, they are fined for it, and are still being fined. Summary Judgment should be granted as to the issue of excessiveness of the fines.

16

**MEMORANDUM OF LAW**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*.

The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See <u>Celotex Corp</u>.  v.  <u>Catrett</u>, 477 U.S. 317 (1986).

A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. <u>Id</u>. at 325.

*Rule 56* permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  See <u>Id</u>.

When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. <u>Id</u>. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See <u>Spence</u> v. <u>Zimmerman</u>, 873 F.2d 256 (11th Cir. 1989);

*Samples on Behalf of Samples* v. *City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).Defendants cannot avoid summary judgment with conjecture. See *Anderson* v. *Liberty Lobby Inc*., 477 U.S. 242, 248-49 (1986), or with conclusory, self serving, or un-corroborated allegations in an affidavit or deposition. *Early* v. *Champion Int'l Corp*., 907 F. 2d 1077, 1080 (11th Cir. 1990) (Citing *Celotex*, 477 U.S. at 327).

## **CONCLUSION**

For all the reasons outlined herein Plaintiffs move for a Summary Judgment finding the as applied shed and vehicle height ordinances to be applied unconstitutionally herein.

They further move for a finding that the fines are excessive and should be terminated for a lack of evidence of harm to the health safety and welfare of the city, its citizens, or Conleys neighbors.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the forgoing, Plaintiffs' Dispositive Motion For Summary Judgment, has been furnished via the Court's electronic filing system, to **JAY DAIGNEAULT, ESQUIRE** located at FRAZER, HUBBARD, BRANDT, TRASK & YACAVONE, 595 Main Street Dunedin, Florida 34698-4998, Fax: (727) 733-2991, jdaigneault@fhbty.com on this 30th day of September, 2009.

/s/ John A. Shahan

**JOHN A. SHAHAN, ESQUIRE**
536 E. Tarpon Avenue Suite 3
Tarpon Springs, FL 34689
Tel:(727) 934-7265
 Fax: (727) 934-8239
 **FBN: 249785**
shahanlaw@tampabay.rr.com
Attorney for Plaintiff(s)