IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL CONLEY and
his wife, KIM CONLEY

        CASE NO.: 8:08-cv-01793-SCB-MAP

      Plaintiffs,

vs.

        Lower Court Case No. 08-012053-CI
        Sixth Judicial Circuit

CITY OF DUNEDIN, a Political
Subdivision of the State of Florida, and
CODE ENFORCEMENT,

      Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
DISPOSITIVE MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

      Defendants, CITY OF DUNEDIN and CITY OF DUNEDIN CODE ENFORCEMENT BOARD (the "City"), by and through their undersigned counsel, respond to Plaintiffs Dispositive Motion for Summary Judgment With Memorandum of Law (Dkt. 63). The City urges this Court to deny the Plaintiffs' motion and instead grant the City's Dispositive Motion for Summary Judgment (Dkt. 48). As grounds therefore, the City states:

      1.     The crux of Plaintiffs' (hereinafter "Conley") claims is that the City has unequally enforced its ordinances against them and imposed excessive fines as a result. (Dkt. 63).

      2.     Specifically, Conley asserts that the City has cited his commercial truck for violating the City's restriction on the height of commercial trucks parked in residential neighborhoods while treating other commercial truck owners more favorably by not citing them. (Dkt. 63 at 8-12). Further, Conley claims that the City wrongfully refuses to issue a post-construction building permit for a shed on his property. (Dkt. 63 at 12-13). Finally, Conley complains that the code enforcement fines issued in relation to the aforementioned violations are

excessive under the Eighth Amendment. (Dkt. 63 at 14-16).

3.   Because Conley has failed to meet his summary judgment burden, his motion for summary judgment should be denied and the City's should be granted.

## **MEMORANDUM OF LAW**

I.   **SUMMARY JUDGMENT IS NOT APPROPRIATE IN FAVOR OF CONLEY BECAUSE HIS "UNDISPUTED" FACTS ARE NOT UNDISPUTED. THE UNDISPUTED EVIDENCE WARRANTS SUMMARY JUDGMENT IN FAVOR OF THE CITY.**

   A.   **Summary of Conley's argument.**

The thrust of Conley's summary judgment argument is three-fold: first, that the City applied its ordinance restricting the height of commercial vehicles parked in residential areas unequally against him; second, that the City has applied its building permit ordinance unequally in failing to issue a permit for Conley's shed, and; third, that the fines imposed upon him as a result of code enforcement proceedings relating to both violations are excessive under the Eighth Amendment. Because there is virtually no evidence of unequal treatment, summary judgment is inappropriate as to Conley but should be granted in favor of the City. Because Conley's argument regarding his claims is based on misrepresented facts and flawed analyses, summary judgment his favor is inappropriate. Finally, to the extent that Conley has cited any evidence at all, it supports only the conclusion that Conley has not been treated unfairly. In sum, summary judgment is warranted in this case, but should be granted to the City instead of Conley.

   B.   **Summary judgment is not warranted on Conley's as-applied challenge to the City's commercial truck ordinance because he has presented no evidence**

**that he was treated differently than any other similarly situated person.**

**1. Conley's misrepresentation of the evidence on the truck violation.**

Conley's motion for summary judgment contains numerous factual inaccuracies and misrepresentations of the record which are apparently designed to create a triable issue of fact. Pages 1 through 7 of the motion are submitted under the broad and misleading heading "Statement of Undisputed Facts." Merely labeling facts as undisputed is insufficient to meet the summary judgment burden, and summary judgment should be denied to Conley because he has simply made unsupported conclusions from his "undisputed facts."

Conley has predicated much of the lawsuit on his assertion that the City gave him written permission to keep the admittedly non-conforming truck on the property. (Dkt. 15 at ¶¶ 7, 32; Dkt. 63 at ¶¶ 4, 5). Assuming *arguendo* that this forms part of an equal protection claim, it still must fail because it has been demonstrated to be false. Conley asserts that the written permission is evidenced by an affidavit of compliance executed by James Leavengood in 2004. (Dkt. 63 at ¶ 4; Dkt. 50-6). But Conley testified unequivocally during deposition that the 2004 affidavit of compliance related only to the first truck he had on the property that was cited by the City's code enforcement inspector, not the second truck that it is the subject of this litigation. (Dkt. 50 at 33-40). Further, he testified that there was another affidavit of compliance, separate from the one previously referenced, that authorized him to keep the truck on the property, yet it was never produced. (Dkt. 50 at 52-53). As is made abundantly clear by the actual undisputed evidence, Conley was not given written permission to keep the second truck on the property in violation of the ordinance. Instead, he was given an affidavit demonstrating that he had achieved compliance with the code by removing the first truck from the property.

Conley goes on to mimic the allegations of the Amended Complaint in the remainder of

his "Statement of Undisputed Facts," primarily regarding the subsequent code enforcement proceedings. (Dkt. 63 at ¶¶ 10-23). Because these alleged "facts" are pertinent to Conley's procedural due process claim, on which he does not seek summary judgment, the City does not herein address them except to emphasize to the Court that the evidence on the procedural due process claims warrants that summary judgment be entered in favor of the City. (Dkt. 48 at 10-11; Dkt. 56). The evidence is clear that Conley had notice and a fair opportunity to be heard throughout the code enforcement process—that he chose not to exercise that opportunity does not amount to a constitutional violation by the City.

### 2. Conley has adduced no evidence proving that he was treated differently than a similarly situated commercial truck owner.

In support of his motion, Conley writes that he "clearly showed through his deposition that although alerting the City that they needed to cite the new trucks that are nine (9) feet high, made by Dodge, Chrysler and Ford in the residential neighborhood, if citing him for eight (8) foot (8) inches, but they refused to do so." (Dkt. 63 at 8). Conley's deposition demonstrates no such evidence, and the motion should be denied.

What Conley's deposition demonstrates is that he did not know anything about the alleged comparators other than what he observed in driving by and snapping photographs of them. As to the first photograph (Dkt. 50-13), Conley was asked if the vehicle, a camper, was used for commercial purposes and replied, "I have no idea." (Dkt. 50-2 at 3). When asked who owned the camper, he replied, "Whoever – I have no idea." (Dkt. 50-2 at 3). As to all of the photos, Conley did not know who owned the vehicle or if the person that owned the vehicle owned the property where it was parked. (Dkt. 50-2 at 2-12). In only one instance could he testify that the vehicle was outside the dimensions stated in the ordinance. (Dkt. 50-2 at 9).

Significantly, he did not know if any of the comparators had been cited by the City's code enforcement department. (Dkt. 50-2 at 13).

The City's ordinance, § 134-239, Dunedin Code of Ordinances ("DCO"), contains distinct elements. The ordinance states that:

> In all residential districts, as defined in Article VIII of this chapter, one commercial vehicle of not more than ten thousand (10,000) pounds gross vehicle weight, not exceeding twenty (20) feet in length and not exceeding (8) feet in height may be parked in an off-street location on a lot in a residential district, providing that such commercial vehicle or equipment is used by the permanent resident of the premises. Such commercial vehicles will be measured by measuring the outside dimensions of the vehicle and any attachments or additions thereto. It shall be unlawful to park any commercial vehicle or equipment in any residential district other than as described in this section. For the purpose of this section, one (1) utility trailer not exceeding eight (8) feet in length or eight (8) feet in height when used in conjunction with the commercial vehicle by the resident may be parked in an off-street location on a lot in a residential district.

First, to be in violation of the ordinance, a vehicle has to be used commercially. Conley has no knowledge how the alleged comparators are used. Then, the vehicle must exceed any one of three spatial dimensions. Without measuring, Conley testified that one of the comparators exceeded the height and length limitation, but has no knowledge of the others (and has no knowledge how that comparator is used, commercially or not). Finally, the ordinance provides that one commercial vehicle meeting the spatial restrictions can be parked in an off-street location in a residential district "providing that such . . . vehicle . . . is used by the permanent resident of the premises." Conley does not know who owns the alleged comparative vehicles or the properties where they were parked on the day he took the pictures, so he has not demonstrated that the vehicles are used by the permanent residents of those properties. His bare conclusion that these alleged comparators are in violation of the ordinance is insufficient to

warrant summary judgment in his favor.

Moreover, under the plain wording of the ordinance, a vehicle that exceeds the spatial limitations is only in violation if is also used commercially. So, it can be inferred that non-commercial vehicles, such as campers, RVs, or conversion vans, are permitted in residential districts without regard to their size. So, Conley's photographing of vans and campers and the like is unavailing unless he proves that they are commercial vehicles, which he has not even attempted to do.

Undeterred by his unambiguous deposition testimony, Conley filed pictures of additional alleged comparators in support of his motion. (Dkt. 63-2 at 17-20). The Court should exclude the photographs from its analysis in this case because they have not been authenticated and were not provided to the City in discovery. Without waiving its objection, the City herein addresses their efficacy as alleged comparators because it will have no further opportunity to address Conley's motion.

All of these alleged comparators suffer from the same deficiencies as the ones adduced at Conley's deposition. The first shows a "conversion van" apparently parked at 969 Pinewood in Dunedin.[1] (Dkt. 63-2 at 17). Though the photograph's caption states conclusorily that it is eight feet, ten inches tall, there is no evidence to support the measurement. Assuming that it is the height stated by Conley, there is no suggestion or allegation that the van is used commercially. There is no evidence that the person that owns or drives the van is not there temporarily visiting the occupant of the house. There is no evidence identifying the permanent resident of the house. There is no evidence demonstrating that the vehicle has or has not been cited by the City's code enforcement department.

---

[1] Conley has not troubled himself to prove in any way that any of the alleged comparators are actually parked in residential districts. It is possible that they are parked in mixed use or commercial districts. The Dodge Sprinters at Dkt. 63-2, p. 20 certainly appear to be parked in a commercial environment.

The third photograph identifies "Brain Novack's" Sprinter Van located at 465 Limewood Pl. (Dkt. 63-2 at 19). Again, the measurement is unverified and there is no evidence the truck is used commercially. There is no evidence that "Brain Novack" is the permanent resident of the house or that he owns the Sprinter Van, and there is no evidence that the Sprinter Van has or has not been cited by the City's code enforcement department. Further, "Brain Novack" has not been identified as a witness in this case pursuant to Fed. R. Civ. P.26.

In sum, Conley has failed to adduce any evidence on which to base his equal protection claim as to the truck violation. Conley's testimony demonstrates that the 2004 affidavit of compliance concerned only the first truck and cannot be construed as affirmative permission to keep the second truck on his property. Conley's deposition testimony on this issue was clear and unambiguous. Conley has failed to identify sufficient comparators who were treated differently with respect to § 134-239, DCO. Summary judgment should be denied to Conley and entered in favor of the City.

> **C.  The motion for summary judgment on Conley's equal protection claim should be denied as it concerns the shed violation because Conley has failed to adduce any evidence supporting summary judgment.**
>
> **1.  Conley's "Statement of Undisputed Facts" simply mirrors the allegations of the Amended Complaint, which the evidence shows are incomplete and insufficient to warrant summary judgment in Conley's favor.**

In support of his motion for summary judgment on his equal protection claim regarding the shed violation, Conley has inexplicably set forth as "undisputed facts," almost to the word, the factual allegations of the Amended Complaint. (Compare Dkt. 63 at ¶¶ 24-30 with Dkt. 15 at ¶¶ 25-30). He has added only that "[n]o opportunity to show no damage to any neighbor by the un-permitted shed has resulted in a daily excessive fine violating the Eighth Amendment against

excessive fines and forfeitures." (Dkt. 63 at ¶ 30). Fatal to his claim, Conley's bare allegations did not ultimately turn out to be the facts of the case.

The evidence in the case shows that Conley and his neighbors, the Prindivilles, cut a twelve-by-thirty foot shed in two sections using a chainsaw and a sawz-all and placed their respective sections in City-owned easements. The Prindivilles received a post-construction building permit for their shed after: (1) having acquired independent engineering approval by personally visiting a licensed engineer and informing him how they had rebuilt the modified shed; (2) applying for and receiving approval for the City to vacate its easement; and (3) receiving a final inspection of the shed by the City's building department. (Dkt. 48 at 7-10).

The City's undisputed evidence demonstrates that a previously enclosed manufactured structure that is lopped in two is no longer considered an enclosed manufactured structure because the modification may render it structurally deficient. (Dkt. 55). Though plans appropriate for an enclosed manufactured shed might ultimately be appropriate for Conley's shed (depending on whether the manner in which he rebuilt it satisfies a qualified engineer, as occurred with the Prindivilles), the plans for the original shed in this case are insufficient without an independent engineering evaluation. Conley's naked statement that "structural soundness is a non-issue" is unsupported by the evidence. Conley is not a trained or licensed engineer and is simply unqualified to unilaterally determine that the rebuilt shed is structurally sound. (Dkt. 50 at 15). He did not seek any engineering opinion on the structural integrity of the shed other than the plans he printed off the internet. (Dkt. 50-2 at 19).

The evidence also shows that Conley never submitted an application for the City to vacate the easement burdening his property. During deposition, Conley testified that Kevin Campbell, the head of the City's Community Services Department, told him he could not acquire

a permit for the shed because (a) an engineer would need to draw up plans for the shed as modified; and (2) the City never vacated utility easements. (Dkt. 50-2 at 25-26). Conley said that he did not speak with anyone else regarding the permit. (Dkt. 50-2 at 26). But, in support of the instant motion, Conley filed an affidavit asserting that it was the City's Building Official, Rick Johnson, and James Leavengood who told him that he could not get a building permit. (Dkt. 59-2 at ¶ 7, 10, 14). Though the City doubts that the dispute is material, it is clear that Conley cannot gain (or avoid) summary judgment by submitting an affidavit that contradicts, without explanation, his clear answers to unambiguous deposition questioning.[2] See e.g. McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 (11th Cir. 2003); Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc., 735 F.2d 656, 657-58 (11th Cir. 1984). Again, the evidence demonstrates that Conley is not similarly situated to the Prindivilles and that the City's decision to require independent engineering is rational.

Finally, Conley asserts that the code enforcement fine is unwarranted because Conley had "[n]o opportunity to show no damage to any neighbor by the un-permitted shed."[3] Though not especially clear, the City reasonably believes that Conley is suggesting that code enforcement proceedings against a property owner who fails to acquire a building permit are inappropriate unless and until some harm has been occasioned to a neighbor. It may be true that no neighbor has been damaged by Conley's shed, and it may also be true that no neighbor will ever be damaged by it. But the City's ordinance requiring a building permit for such structures is preventative, not remedial, as are similar provisions in virtually every state, county, and

---

[2] It is not unusual for a citizen to be unaware of the identity of municipal officials and employees with whom the citizen is dealing. That not the case here, however, and Conley's about-face on the matter is clearly not one of mistaken identity. Conley himself says that he is familiar with Johnson, having dealt with him routinely over the years. (Dkt. 59-2 at ¶ 4). Clearly he knows Leavengood since he had at least two "run-ins" with him around 2004 before building the shed. (Dkt. 50 at 18-19).

[3] The City believes that this statement might be intended to support the alleged procedural due process violation, but Conley has not moved for summary judgment on those counts.

municipality in the country. Citizens are required to demonstrate that structures they intend to build meet certain standards in order to prevent harm to themselves as well as the community-at-large. Conley's fundamental position that the City's enforcement of the ordinance is unwarranted until a hurricane rips the shed apart and sends it hurtling into a neighbor's house is clearly untenable.

> D. **Summary judgment is inappropriate on Conley's excessive fines claim because he has failed to produce any evidence whatsoever to support it.**

Conley has moved for summary judgment on his claim that the code enforcement fine assessed against him on the shed violation is excessive. (Dkt. 63). This is so, he asserts, because he was assessed a $100.00 per day fine while the Prindivilles were assessed only $25.00 per day for the same violation. But he has presented to this Court no evidence that the City's Code Enforcement Board did not consider the factors announced in the statute and ordinance governing the amount of the fine.

In determining the amount of a code enforcement fine, the board must consider the gravity of the violation, any actions taken by the violator to correct the violation, and any previous violations committed by the violator. § 162.09(3), Florida Statutes; § 22-80(a), DCO. Both Conley and the Prindivilles readily admit that they erected their sheds without a permit. It is clear that the gravity of the violation is high, as indicated herein. The failure to acquire a building permit before erecting a shed has the potential to endanger the general public. It is at that point that Conley and the Prindivilles diverge in terms of the announced factors. There is no evidence that the Prindivilles had committed previous violations, while it is clear that Conley was cited by code enforcement at least two times prior to the shed violation. There is evidence that, at the same time he built the shed without a permit, he built a fence without a permit. Further, the record is clear that the Prindivilles took affirmative steps to correct the violation, while Conley

simply took the position that he was right and the City was wrong.

The crux of Conley's argument is that the fines are excessive because they continue to run. Predictably, this bold assertion is advanced without any legal support whatsoever. (Dkt. 63 at 14-15). But it is clear that the fines continue to run merely because Conley refuses to conform to the City's ordinances or participate in any proceedings related to the violations. Conley himself has the power to stop the fines from running.

Conley asks, "Where's the proof of 'never ending harm' to the neighborhood requiring a never ending fine from a backyard shed neighbors never see, that looks just like the other neighbors shed?" (Dkt. 63 at 15). He appears to misinterpret the respective burdens of the parties on summary judgment. Nevertheless, to the extent that a showing of "never-ending" harm to the neighbors is a prerequisite for the City to continue its daily assessment of a fine on the shed violation, it is represented by the presence of a structure whose structural integrity has not been assessed by a qualified professional. Each day brings a new and substantial risk that a weather event will prove wrong Conley's unsubstantiated and unqualified opinion that the shed can survive such an event. Summary judgment should be denied to Conley and entered in favor of the City.

> **E.  Summary judgment should be entered in favor of the City because Conley has failed to demonstrate that a City policy or custom was the moving force behind the alleged constitutional violations.**

Assuming for purposes of this memorandum that Conley has established a constitutional violation, summary judgment still must be granted to the City because Conley has failed to establish that a policy or custom of the City was the moving force behind the constitutional violation.

While it is well established that a municipality can be sued in an action under 42 U.S.C. §

1983, the municipality cannot be liable on a theory of *respondeat superior* for the injuries caused by its employees. Monell v. Dep't. of Social Services, 98 S.Ct. 2018 (1978). A municipality is only liable under § 1983 if its own "policy or custom," when executed by its officials, caused the constitutional violation. Id. A plaintiff may demonstrate that a municipality has such a policy by identifying "(1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." Grech v. Clayton County, 335 F.3d 1326, 1330 (11th Cir. 2003). Moreover, it is not enough for the plaintiff to merely identify conduct properly attributable to the municipality; the plaintiff must also demonstrate that, through deliberate conduct, the municipality is the moving force behind the alleged injury. Board of County Commissioners v. Brown, 117 S.Ct. 1382, 1390 (1997).

Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. Pembaur v. City of Cincinnati, 106 S.Ct. 1292, 1298 (1986). Such liability is appropriate where (1) the municipality officially sanctioned or ordered the action; (2) the action was taken by a municipal official with final policymaking authority; and (3) the action was taken pursuant to a policy adopted by those officials responsible for establishing policy in that area of the government's business. Whether a particular government official possesses "final policymaking authority" is a question of state law. City of St. Louis v. Praprotnik, 108 S.Ct. 915, 924-25 (1988).

Conley has failed to identify an officially promulgated City policy leading to the alleged constitutional injury. So, the City must assume that he is proceeding on the theory that an unofficial custom or practice caused his injury. But, Conley has adduced no evidence at all identifying this unofficial custom or practice. Summary judgment should be entered in favor of

the City.

Further, assuming that Conley is attempting to establish municipal liability through the City's single acts of (1) citing the oversized truck despite its promise not to; and (2) denying him a building permit for the shed, Conley has failed to demonstrate that a City official with final policymaking authority ordered or ratified the challenged actions. Conley complains, at various junctures, about the conduct of the City's Special Codes Inspector, James Leavengood; the City's Building Official, Rick Johnson; and the City's then-head of the its Community Services Department, Kevin Campbell. Because he has not demonstrated that these individuals have final policymaking authority with respect to the challenged actions, Conley is not entitled to summary judgment.

It is clear that James Leavengood does not have final policymaking authority with respect to the enforcement of the City's codes. The Eleventh Circuit has interpreted <u>Monell</u>'s policy or custom requirement to preclude § 1983 liability for a subordinate official's decisions when the final policymaker delegates decisionmaking to the subordinate, but retains the power to review the exercise of that discretion. "The mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." <u>Mandel v. Doe</u>, 888 F.2d 783, 792 (11th Cir. 1989). Thus, when a subordinate's decision is subject to review by the municipality's authorized policymakers, the policymakers have retained the authority to measure the official's conduct for conformance with their policies. <u>See</u> <u>e.g.</u> <u>Praprotnik</u>, 108 S.Ct. at 926. In this case, the evidence shows that code enforcement decisions are subject to review by the City's Code Enforcement Board and can be appealed to the circuit court. Leavengood is not a final policymaker within the

ambit of Monell. See also Unuvar v. City of Key West, 2009 WL 2915783 (S.D. Fla. 2009); Criswell v. City of Dallas, 2001 WL 609480 (N.D. Tex. 2001).

It is also clear that Rick Johnson and Kevin Campbell are not final policymakers. In Raben-Pastal v. City of Coconut Creek, 573 So.2d 298 (Fla. 1990), rehearing denied (1991), the Florida Supreme Court addressed whether a Florida building official possessed final policymaking authority under Monell and its progeny when the official's decisions were subject to review by a local board of rules and appeals. Answering in the negative, the court acknowledged that building officials have significant discretion in applying the building code, but observed that "[h]aving the authority to make discretionary decisions is not the same as having the authority to make policy. The building official's decisions are not final and unreviewable." Id. at 301. Thus, under state law, a building official is not a final policymaker under Monell when the official's decisions are subject to independent review.

In this case, the City has established not only a code enforcement board, but a board of adjustment and appeal. § 134-91 et seq., DCO. The board of adjustment and appeal is authorized to "hear and decide appeals where it is alleged there is an error in the decision or interpretation of *any* administrative official in the enforcement of the Uniform Development Code." § 134-93 (1), DCO (emphasis supplied). Thus, Johnson's or Campbell's alleged decision to refuse to issue the post-construction building permit for the shed was reviewable by the board of adjustment and appeal. Like in Raben-Pastal, Johnson and Campbell are not official policymakers for the City with respect to the application of the uniform development code. Summary judgment should be denied to Conley and entered in favor of the City.

## II. CONCLUSION

The evidence in this matter demonstrates that summary judgment should be denied to Conley and entered in favor of the City. Conley has failed to show that he was treated differently than any other person with respect to either the truck violation or the shed violation. The evidence shows that the fines are not excessive, and that Conley has failed to demonstrate that a City policy or custom was the moving force behind any of the alleged constitutional violations. The City respectfully requests that this Court enter an Order denying summary judgment to Conley and granting summary judgment to it.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2009 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following participants in the CM/ECF system: John A. Shahan, Esquire, 536 E. Tarpon Avenue, Suite 3, Tarpon Springs, Florida 34689, Attorney for the Plaintiff.

/s/ Jay Daigneault  
Jay Daigneault, Esq.  
FBN 0025859  
James L. Yacavone, III, Esq.  
FBN 225037  
FRAZER, HUBBARD, BRANDT,  
 TRASK & YACAVONE, L.L.P.  
595 Main Street  
Dunedin, Florida 34698  
(727) 733-0494 (telephone)  
(727) 733-2991 (telecopier)  
jdaigneault@fhbty.com