UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL CONLEY,
KIM CONLEY,

       Plaintiffs,

v.                                                   Case No.  8:08–cv–01793–T-24–AEP

CITY OF DUNEDIN, FLORIDA,

       Defendant.
_____/

## ORDER

The Court now considers a motion for partial summary judgment filed by Plaintiffs Michael and Kim Conley (Doc. 63) and a motion for summary judgment filed by the Defendant, the City of Dunedin, Florida. (Doc. 48.) Both motions are opposed. (Docs. 67, 68.)

For the reasons stated in this order, the Court denies the Conleys' motion and grants the City's motion for summary judgment.

## BACKGROUND

*A. The Oversized Truck*

This controversy began in April 2004 when Dunedin special codes inspector James Leavengood first cited Michael and Kim Conley for parking an oversized truck in their driveway in violation of City Ordinance § 134-239.[1] (Doc. 50 at 6-8, 21, Ex. 1.)  Michael Conley, a handyman and carpenter who runs a business out of his home, sold the oversized truck, and

---

[1] In setting out the background in this case, the Court does not make any findings of fact. The background section merely provides context for the Court's analysis of the law.

Leavengood then closed the citation case and issued an Affidavit of Compliance that stated that the Conleys were no longer in violation of the ordinance. (Doc. 50 at 27, Ex. 4.) Soon after, the Conleys decided to buy another truck.

Before buying the truck, however, Michael Conley spoke to Leavengood's supervisor, Kevin Campbell, then head of the City's community services department, to make sure he would not be cited again. Michael Conley said Campbell gave him verbal permission to park another oversized truck in his driveway in violation of City Ordinance § 134-239. (Doc. 50 at 40-42.) While Campbell acknowledged that he spoke to Michael Conley about the purchase, Campbell denied giving him permission to park an oversized truck in his driveway in violation of § 134-239. (Doc. 52 ¶ 4-6.) Michael Conley also claims Leavengood gave him written permission to park the second, oversized truck in his driveway. (Doc. 50 at 44.) However, Leavengood denies this, and the Conleys have not presented any document from Leavengood that authorized them to violate the ordinance.[2] (Doc. 51 ¶ 10.)

Relying on what Michael Conley claimed were Campbell's and Leavengood's assurances that he would not be cited again, the Conleys purchased a second, oversized truck and parked it outside their home. Several months later on January 17, 2006, Leavengood cited the Conleys for parking the new truck in a residential district in violation of City Ordinance § 134-239. (Doc. 50, Ex. 1.) The notice ordered the Conleys to correct the violation by January 28, 2006. Id.

### B. *The Illegally Erected Shed*

About a month after the first citation, the Conleys erected a shed at their home without

---

[2] Michael Conley claims that the Affidavit of Compliance, which Leavengood issued after Michael Conley sold the first truck, constitutes written permission to park the second truck in his driveway. (Doc. 50 at 42-46.) Plainly, the affidavit does not say this. (Doc. 50, Ex. 4.)

obtaining a building permit as required by City Ordinance § 134-42.  Michael Conley constructed the shed by sawing in half a structure that a neighbor, Michael and Susan Prindiville, were going to demolish.  Instead, the neighbors decided to cut the structure in two.  Both the Conleys and the Prindivilles erected their half of the shed on their properties, both on city easements.  (Doc. 50 at 88-93.)  On February 13, 2006, Leavengood cited the Conleys for erecting the shed without a permit.  On March 27, 2006, he also cited the Prindivilles for the same violation.  (Doc. 54-7.)

The Prindivilles responded by asking the City to vacate the easement and by submitting a building permit application with required engineering plans, which cost them $150.  (Doc. 53 at 21-24, 28-34.)  The City vacated the easement, issued the building permit, and then waived all of the Prindivilles' fines and closed the citation case.  (Doc. 54, Ex. 2, 5; Doc. 54, Ex. 3.)

The Conleys submitted a building permit application too, but without the required engineering plans.  Instead, Michael Conley included plans from the original manufacturer for a whole, unaltered shed that he printed off the Internet.  (Doc. 50 at 94-104.)  Because the Conleys' application did not include the required engineering plans for an altered shed, the City considered the application incomplete and did not approve it.  (Doc. 55 ¶ 12.)  The Conleys never submitted another application with the required engineering plans.

*C. Code Enforcement Hearings*

By April 2006, the Conleys had not corrected either violation for the oversized truck or the illegal shed.  As a result, Leavengood referred both violations to Dunedin's Code Enforcement Board.  He notified the Conleys by certified mail that the Board would take up the violations at a hearing on May 2, 2006.  (Doc. 51 ¶¶ 16, 23.)

The Conleys then hired attorney John Shahan, who also represents them in this lawsuit. Because Shahan had a conflict on May 2, he asked his paralegal, Patricia Bliss, to call the Code Enforcement Board and seek a continuance of the hearing until July. Bliss spoke to Irma Smith, senior technical assistant to the Code Enforcement Board. While Bliss has no memory of the conversation, Shahan asserts that Smith told Bliss that the Board routinely grants continuances and, unless she heard otherwise by April 30, the continuance would be automatically approved. (Doc. 56 ¶ 2.) Smith denies making this promise. (Doc. 56 ¶¶ 3, 8.)

On May 2, neither the Conleys nor their attorney appeared at the Code Enforcement Board hearing. The Board considered Shahan's written request for a continuance, but denied it. Based on Leavengood's presentation, the Board found that the Conleys had violated Dunedin's ordinances by parking an oversized truck in their driveway and by building a shed without a permit. (Doc. 51 ¶ 25.) The Board gave the Conleys until May 19 to correct the truck violation and until May 31 to correct the illegal shed violation. Id.

On May 10, the Board sent the Conleys and their attorney notice by certified mail of the Board's action and informed them that the Board would hold a second hearing on June 6, 2006 to determine whether the Conleys had corrected the violations. (Doc. 56 ¶¶ 12-14.) Although the Conleys did not claim the certified letter, Shahan did. Id.

On June 6, neither the Conleys nor their attorney appeared at the second Code Enforcement Board hearing.[3] Based on Leavengood's affidavit that the Conleys had not corrected the violations, the Board imposed a $50 a day fine for the oversized truck violation of

---

[3] When first seeking a continuance, Shahan indicated he had a trial on June 6 and wanted the first hearing moved to July.

Ordinance § 134-239 and a $100 a day fine for the illegal shed violation of Ordinance § 134-42. Those fines continue to accrue to this day and have swelled to more than $198,000.

In August 2008, more than two years after the fines began to accrue, the Conleys filed suit in state court against the City alleging a variety of federal and state constitutional violations. The City removed the case to U.S. District Court pursuant to 28 U.S.C. § 1441. In March 2009, the Court dismissed eight claims of the Amended Complaint. Two federal claims and numerous state law claims remain.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). Therefore, the moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When the moving party has discharged its burden, the non-movant must then go beyond the pleadings, and by her own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue of material fact for trial. Id.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether there is a "genuine" issue, the inquiry is

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.  In addition, a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.  "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Id. at 252.

## ANALYSIS

**I.     Count I:  The City Did Not Violate the Equal Protection Clause by Citing the Conleys**

The Conleys first bring an as-applied challenge under the Equal Protection Clause of the Fourteenth Amendment to Ordinances §§ 134-239 and 134-42.  The Conleys do not claim that the City treated them unequally because they belonged to a suspect class.  Instead, the Conleys bring a "class of one" claim, alleging that the City, without any rational basis for doing so, intentionally treated them differently from other similarly situated people.  To prove a "class of one" claim, the Conleys must show (1) that they were treated differently from other similarly situated individuals, and (2) that the City unequally applied a facially neutral ordinance for the purpose of discriminating against them.  Leib v. Hillsborough County Pub. Transp. Comm'n, 558 F.3d 1301, 1307 (11th Cir. 2009).

*A. The Oversized Truck Violation*

The Conleys allege that the City treated them unequally by citing them for their oversized truck, even though they claims that the City has not cited other residents for parking oversized

trucks in their neighborhood.

In order to establish the first prong of a "class of one" claim, the Conleys cite to a series of photographs that Michael Conley took of ten other vehicles parked in residential areas. (Doc. 50, Exh. 11.) The Conleys claims that the ten photographs show that the City has not treated them equally because the City has not cited the owners of the photographed vehicles who, they claim, were also violating the Ordinance. Even if the Court draws every inference in the Conleys' favor and assumes that the photographed vehicles are parked in a residential area, belong to the owners of the homes, exceed the size limits of the Ordinance, and violate all the other conditions of the Ordinance,[4] the Conleys have not presented sufficient evidence to create a genuine issue of material fact for this Court to resolve at a bench trial.[5] In an affidavit, Michael Conley acknowledged that he only spoke to two owners of the ten photographed trucks. (Doc. 68-2.) One of those two owners acknowledged that inspectors had told him that his truck violated the city code—and, therefore, as far as the Conleys know, that owner could have already been cited. Id. In a deposition, Michael Conley acknowledged that he did not know if the City had cited any of the vehicle owners. (Doc. 50 at 88.) The Eleventh Circuit has "frequently noted that the 'similarly situated' requirement must be rigorously applied in the context of 'class of one' claims.'" Leib, 558 F.3d at 1307 (internal citations omitted). "Employing '[t]oo broad a

---

[4] And this would be a generous assumption, indeed, since Michael Conley acknowledged in his deposition that he has not gathered evidence needed to establish that the owners of the vehicles in his photographs violated all of the conditions of Ordinance § 134-239. (Doc. 50-2 at 2-12.)

[5] The Court set this case for a non-jury trial in its first Case Management and Scheduling Order. (Doc. 12.) The Conleys did not object to the order and did not request a jury trial in their Complaint.

definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties.'" Id. Given this rigorous standard, Michael Conley's photographs and his testimony about his investigation (or lack of investigation) cannot establish that the unnamed owners of the photographed vehicles are similarly situated to him or his spouse.

*B. The Shed Violation*

Similarly, the Conleys cannot establish that they are similarly situated to the Prindivilles, who were also cited for violating Ordinance § 134-42 for erecting a shed without a permit. In the Prindivilles' case, the City waived the fines after the Prindivilles requested that the City vacate an easement and after the Prindivilles applied for a building permit by submitting required engineering plans. (Doc. 55 ¶ 7.) By comparison, the Conleys refused to submit the required engineering plans because Michael Conley believed that his plans, printed off the Internet, were sufficient.[6] (Doc. 50-2 at 49; Doc. 55 ¶ 12.) If the Conleys had submitted the same plans as the Prindivilles, however, it is conceivable that they would be similarly situated to the Prindivilles. Because the Conleys did not submit the plans, they are not similarly situated to the Prindivilles for comparison purposes under an Equal Protection Clause "class of one" claim. Therefore, because the Conleys have presented insufficient evidence for the Court at a bench trial to find that they satisfied the first prong of a "class of one" claim, their claim cannot proceed as a matter

---

[6] In the Conleys' response, the Conleys' attorney asserts: "Further, Mr. Conley submitted the same engineering plans required by the City to ensure that the shed met the standards of the Florida Building Code as the Prindivilles." This assertion is not supported by a citation to the record and by the facts.

of law.

The Court rejects the City's arguments that the Conleys' Equal Protection claim is not ripe. While the Conleys have not yet applied for—and been denied—a permit to build the shed, the Conleys have suffered an actual injury because the City has already fined them. The fact that the Conleys might be able resolve the fines and citation without suing does not preclude judicial review.

The City's reliance on National Advertising Co. v. City of Miami, 402 F.3d 1335 (11th Cir. 2005), is misplaced. In National Advertising Co., a billboard company challenged the constitutionality of Miami's billboard ordinance even before the City of Miami had denied it a permit to erect a billboard. Unlike this case, the City of Miami had not fined the billboard company for erecting a billboard without a permit.

## II.   Count I: **The City Did Not Violate the Excessive Fines Clause of the Eighth Amendment**

The Conleys also allege that the City violated the Eighth Amendment's prohibition on excessive fines by imposing a $50 a day fine for violating Ordinance § 134-239 and a $100 a day fine for violating Ordinance § 134-42. Even assuming that all of the facts that the Conleys allege are true, the Conleys cannot make a claim as a matter of law that the city's fines violate the Eighth Amendment.[7]

The Eighth Amendment, as applied to the states through the Fourteenth Amendment,[8] prohibits the imposition of excessive fines. The Clause, however, only applies to assessments

---

[7] For the same reasons that the Court found the Conleys' equal protection claim ripe, the Court finds their Eighth Amendment claim ripe.

[8] Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-34 (2001).

that can be considered "fines" because the assessments are designed, in part, to punish. Austin v. United States, 509 U.S. 602, 609-10 (1993). Even if the Court assumes, without deciding, that the City's fines are "fines" subject to the Eighth Amendment,[9] the Conleys still have no claim that the fines are excessive. "A fine is excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" United States v. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d 1304, 1309 (11th Cir. 1999) (citing United States v. Bajakajian, 524, U.S. 321, 334 (1998)). In this case, the city imposed fines of just $50 a day and $100 a day. These daily fines are relatively small—they do not approach the size of the few fines found to be excessive.[10] Thus, the City's small fines are proportional to the Conleys' small offense. In addition, because "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," courts should give substantial deference to a legislature's broad authority to set punishments. United States v. Bajakajian, 524, U.S. 321, 336 (1998). Since the City's fines of $50 and $100 a day fall within the range permitted by the Legislature under Florida Statute § 162.09(2), which permits daily fines of $250, the Court cannot find that the fines here are "grossly disproportional" to the offense.

---

[9] Earlier in this case, the City argued that the code violation fines are purely remedial and, therefore, are not "fines" subject to the Eighth Amendment. The City did not raise this argument in its summary judgment motion, however. In the Court's Order on Defendant's Motion to Dismiss (Doc. 29), the Court noted that the Eleventh Circuit had not squarely decided whether fees imposed for violating city ordinances are "fines." However, since the Court's order, the Eleventh Circuit in a non-precedential opinion treated a $150 a day fine imposed by the City of Ft. Lauderdale for a code violation as a "fine" for Eighth Amendment purposes. Moustakis v. City of Ft. Lauderdale, 338 Fed. Appx. 830 (11th Cir. 2009). However, the Court in this case does not reach this legal question because it is not necessary to do so.

[10] For example, the U.S. Supreme Court found a forfeiture of $357,144 to be an excessive fine as punishment for the defendant failing to report that he was carrying $10,000 as he left the county. United States v. Bajakajian, 524, U.S. 321, 324-25 (1998).

Of course, by failing to correct the code violations, the Conleys have allowed a small fine to grow into an enormous one. However, the Conleys' refusal to comply with the code for three and a half years does not make the amount of the two daily fines of $50 and $100 excessive. "[I]t would be contrary to reason and public policy to allow plaintiffs to evade responsibility simply by neglecting to (or deciding not to) pay fines for so long a period of time that the cumulative amount owed becomes large enough for plaintiffs to argue unconstitutionally excessive punishment." Moustakis v. City of Ft. Lauderdale, No. 08-60124-Civ, 2008 WL 2222101, at *2 (S.D. Fla. 2008), aff'd, Moustakis v. City of Ft. Lauderdale, 338 Fed. Appx. 830 (11th Cir. 2009).

### III.   Count I:  The Conleys Have Not Plead a Claim of Equitable Estoppel

In the Court's order of March 25, 2009 on the City's motion to dismiss (Doc. 29), the Court outlined the claims in the Conleys' Amended Complaint. In an attempt to make order out of the chaos of the Amended Complaint, the Court construed Count I to allege violations of procedural due process, equal protection, the Sixth Amendment right to counsel, and the Eighth Amendment prohibition of excessive fines. Id. at 5-6. The Court did not identify a claim of equitable estoppel, which was not separately plead even though it was discussed. The Conleys did not object to the Court's characterization of the complaint and did not move to further amend the Amended Complaint to add an equitable estoppel claim. Nevertheless, the City in its motion for summary judgment addressed the equitable estoppel theory in the event that the Court decided to pull such an equitable estoppel claim out of the maze of this case.

Because the Court did not recognize an equitable estoppel claim in its earlier order, the Court will not recognize one now. Even if the claim had been properly pled, the Court would

decline to exercise its discretion under 28 U.S.C. §1367(c)(3) to hear the claim now that all the federal claims are extinguished.

### IV. Counts II and IV: The City Did Not Violate the Conleys' Procedural Due Process Rights Under the Florida Constitution

The Conleys assert that the City violated their procedural due process rights to notice and an opportunity to be heard by refusing their request to continue the two code enforcement hearings on the citations. The Conleys' state procedural due process claims fail for both procedural and substantive reasons.

Before the Conleys can challenge the City's action as applied to them on state constitutional grounds, Florida law requires the Conleys to exhaust their administrative remedies.[11] They failed to do so. Although Florida Statute § 162.11 gives the Conleys 30 days to appeal the final order of a code enforcement board to a circuit court, the Conleys waited more than two years to file this constitutional challenge in state court on August 14, 2008.[12] (Doc. 2.) The requirement that litigants exhaust their administrative remedies before suing not only serves the courts, by forcing an agency to create a record of its decisions, but the requirement also serves the citizenry, by allowing citizens to resolve disputes locally in an administrative setting.[13]

---

[11] Cen. Fla. Invs., Inc. v. Orange County Code Enforcement Bd., 790 So. 2d 593, 596-97 (Fla. 5th DCA 2001); City of DeLand v. Lowe, 544 So. 2d 1165, 1168-69 (Fla. 5th DCA).

[12] Although a circuit court is not an administrative agency, an appeal of a code enforcement board decision to a circuit court under Florida statute §162.11 serves as an administrative remedy because the circuit court acts as an appellate body of the administrative proceeding, reviewing only the record below for error, rather than adjudicating a separate cause of action.

[13] See DeCarlo v. Town of West Miami, 49 So. 2d 596, 597 (Fla. 1951) ("[T]he inequalities of a zoning ordinance, if called to the attention of such local administrative boards, may frequently be adjusted at that level.").

In fact, this case illustrates the utility of the exhaustion requirement. A dispute about continuing a code enforcement hearing is precisely the type of local matter than a prompt appeal to circuit court—rather than a constitutional challenge in federal court—may have resolved.

Even if this obstacle to the Conleys' claim did not exist, the Court would grant the City summary judgment because the Conleys have failed to present evidence that the City denied them notice and an opportunity to be heard, as required by the Florida Constitution. See Fla. Const. Art. I, § 9; Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth., 795 So. 2d 940, 948 (Fla. 2001). Neither party disputes that the City sent the Conleys and their attorney notice by certified mail of the code enforcement hearings, and that their attorney, John Shahan, received the notices.

Shahan alleges that the City denied the Conleys an opportunity to be heard because the Board refused to continue the code enforcement hearing at Shahan's request after a city official told Shahan's paralegal, Patricia Bliss, that a continuation would be granted. Assuming, without deciding, that this broken promise would violate procedural due process, the Conleys can present scant evidence that any city official ever promised in a phone conversation to continue the code enforcement hearings. The city official, Irma Smith, denies that she made the promise to Shahan's paralegal. (Making such a promise would have been totally contrary to office protocol.) The paralegal, Patricia Bliss, has no recollection of such a promise. The paralegal's notes of the telephone conversation say nothing about such a promise. Shahan's follow-up letter to the city seeking a continuation makes no mention of such a promise. The only evidence of such a promise is Shahan's assertion that Smith made this promise to his paralegal. Assuming that Shahan's account would be admissible, Shahan's assertion about what was said in a

13

conversation that he did not hear amounts to, at most, a crumb of evidence—not enough to create a genuine issue of material fact for the Court to resolve at a bench trial.

In addition, the Conleys argue that Smith should have polled the members of the Code Enforcement Board before the meeting to determine whether the Board would grant the Conleys' continuance request. The Conleys cite no legal authority that required Smith to poll the Board members, and it is likely that polling the board members privately would have been illegal under Florida law in any event.[14] This argument has no merit.

The Conleys also claim that the City violated procedural due process by failing to make any findings and failing to consider the lack of gravity of their offense. Even assuming that this is true—and that remains very much in doubt given the plain reading of the record—due process as a state constitutional matter only requires notice and an opportunity to be heard.[15] Keys Citizens for Responsible Gov't, Inc., 795 So. 2d at 948. The Florida Constitution does not require code enforcement boards to articulate their reasoning or consider certain factors in making decisions, even if state law requires this.[16] Therefore, the Court grants the City summary

---

[14] See Blackford, et al. v. Orange County Sch. Bd., 375 So. 2d 578, 580-81 (Fla. 5th DCA 1979); Fla. Att'y Gen. Opinions 89-23, 75-59.

[15] The Code Enforcement Board's order contains clear findings of fact and conclusions of law, despite the Conleys' assertion that it does not.

[16] Florida Statute § 162.09(b) reads: "In determining the amount of the fine, if any, the enforcement board shall consider the following factors:
    (1) The gravity of the violation;
    (2) Any actions taken by the violator to correct the violation; and
    (3) Any previous violations committed by the violator."

Even assuming that the Board failed to consider these factors, the Conleys have not brought a claim that the board violated Florida Statute § 162.09. They have brought a constitutional claim on state procedural due process grounds. Minimum due process requirements under the Florida Constitution do not necessarily mirror more exacting

judgment on the procedural due process claim in Counts II and IV of the Amended Complaint.

## VI.     Counts VI and VII: The Conley's Facial Attack on the Constitutionality of Florida Statute § 162.09 Fails

The Conleys also mount a facial attack[17] on Florida Statute § 162.09 by arguing that the statute on its face violates due process because the statute permits a code enforcement board to impose a fine on a violator without a hearing.[18]  "A facial attack on a statute may not succeed where the statute in question has been interpreted by the state courts in such a way as to make the statute's operation constitutional."  Agan v. Vaughn, 119 F.3d 1538, 1544 (11th Cir. 1997). In this case, Florida courts have interpreted Florida Statute § 162.09 to require the type of post-deprivation hearing that the Conleys were afforded, but choose not to attend because they mistakenly believed the hearing would be continued.  Massey v. Charlotte County, 842 So. 2d 142, 145-47 (Fla. 2d DCA 2003).[19]  Therefore, a facial attack on the statute must fail.[20]

---

requirements that the Legislature can voluntarily impose on localities by statute.

[17] The Conleys are not required to exhaust administrative remedies before making a facial attack under the Florida Constitution on a statute.  Cen. Fla. Invs., Inc. v. Orange County Code Enforcement Bd., 790 So. 2d 593, 597 (Fla. 5th DCA 2001) ("A landowner may make a general attack on the validity of an ordinance without exhausting administrative remedies.)

[18] The statute reads: "If a finding of a violation or a repeat violation has been made as provided in this part, a hearing shall not be necessary for issuance of the order imposing the fine."  Fla. Stat. § 162.09(1).

[19] The Second District Court of Appeal in Massey did not set out specific procedures that a code enforcement board must follow to comport with due process.  Massey, 842 So. 2d at 147. However, the Court did suggest that a code enforcement board would satisfy due process by mailing a notice to a property owner that allows the owner to request a hearing.  Id. at 147 n.3. Dunedin's Code Enforcement Board followed precisely this procedure before imposing a daily fine on the Conleys.

[20] Defendants asked the Court for permission to file a summary judgment motion in excess of 25 pages.  (Doc. 46.)  After the Court denied the City's request, the City skirted the Court's page limit by simply "incorporating by reference" three pages of argument made in an

## VII.    <u>Count VIII</u>: The Conleys Have Presented No Admissible Evidence That the City Illegally Searched Their Property

In Count VIII of the Amended Complaint, the Conleys seek a declaratory judgment that the City violated their state constitutional rights by illegally entering their property without a search warrant. However, even assuming that the City's actions as alleged would violate the Conleys' privacy rights under state law and the Florida Constitution, the Conleys have not presented any admissible evidence to support the claim that the City entered their property. Nor did the Conleys present any argument in response to the City's motion for summary judgment on this count or designate any facts that create a dispute for the Court to resolve at a bench trial.

Both Michael and Kim Conley acknowledge that they never saw any city official walk onto their property. (Doc. 50 at 106; Doc. 49 at 18.) However, in a deposition, Michael Conley offered two inferences to support his claim that a City official illegally searched his property without a warrant. First, Michael Conley claimed that Leavengood, the inspector, admitted in a February 13, 2006 citation letter that he entered the Conley's property. The letter begins: "An inspection of your property on February 13, 2006 revealed a violation(s) of the City Code of Ordinances." (Doc. 51-7.) Michael Conley argues that by acknowledging that he conducted an "inspection" of the property, Leavengood has admitted that he entered the property. The Conleys read too much into Leavengood's letter. The Conleys' inference assumes that since Leavengood could have inspected the property by entering the yard, he actually did so. Leavengood could have also inspected the Conleys' shed by looking at it from the property line—which is what Leavengood said he did. (Doc. 51 ¶ 19.) Photographs show that anyone

---

earlier filing. This is not proper. The Court expects that the City will abide by the rules of the court, as it expects its citizens to abide by its rules.

could have viewed the shed from the street. (Docs. 51-5, 51-6.) In meeting their burden under Rule 56, the Conleys "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Conleys must demonstrate that there is a "genuine issue for trial." They have failed to do so with this supposition.

In his deposition, Michael Conley also offers inadmissible hearsay testimony that his neighbor, Glenn Bolyard, told him that he saw a city official walking down the side of the Conleys' house. (Doc. at 107-08.) However, Bolyard in an affidavit denied the claim. "At no time have I seen any person from the City intrude on Mr. Conley's property," Bolyard said. (Doc. 58 ¶ 4.) Bolyard also denied that he would tell Michael Conley otherwise. Id. Leavengood also denied that he set foot on the Conleys' property. (Doc. 51 ¶ 19.) Therefore, the Conleys have offered no admissible evidence that a city code inspector ever set foot on their property.

Because the Conleys have not presented any admissible evidence to support their illegal search and seizure claim in Count VIII, no genuine issue of material fact remains for the Court to decide at a bench trial. Therefore, the Court grants the City summary judgment on Count VIII.

## CONCLUSION

Accordingly, the motion for partial summary judgment filed by Plaintiffs Michael and Kim Conley (Doc. 63) is **DENIED**, and the motion for summary judgment filed by the City of Dunedin, Florida (Doc. 48) is **GRANTED**.

The Clerk is directed to enter a judgment on all counts in favor of the Defendant, the City of Dunedin, Florida, and its code enforcement board, and against Plaintiffs Michael Conley and

Kim Conley.

The Clerk should terminate any pending motions, cancel any scheduled hearings, and close the case.

**ORDERED** in chambers at Tampa, Florida this 11th day of January, 2010.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge


Copies to:
Counsel of Record